**UNITED STATES ex rel. CUNNINGHAM v. BARRY et al.**

District Court, E. D. Pennsylvania. April 20, 1928.

No. 131.

**I. United States ⊸14, 23—Senate may conduct inquiry through judicial forms of compelling attendance of witnesses, as aid to legislation or to determine qualifications of one claiming membership.**

Senate has power to conduct an inquiry through judicial forms of compelling the attendance of witnesses from whom testimony is desired as an aid to legislation, or when the Senate is sitting as a court to judge the election returns and qualifications of any one claiming membership in that body.

**2. United States ⊸23—Senate does not possess general power of making inquiry into citizen's private affairs, nor to compel disclosures relating thereto.**

The United States Senate does not possess a general power of making inquiry into private affairs of citizens, nor to compel disclosures relating thereto, and hence a witness may rightfully refuse to answer questions relating to matters beyond the bounds of lawful power of inquiry, or when questions are not pertinent to matter under inquiry.

**3. Habeas corpus ⊸92(1)—Court, in habeas corpus, has power only to pass on propriety of relator being put on trial.**

Court, in habeas corpus proceeding, has power only to pass on propriety of relator being put on trial, the merits of the case being for trial court.

**4. United States ⊸14, 23—Senate, in pursuing inquiry in aid of legislation or determining election returns and qualifications of members, may enforce attendance of witnesses.**

United State Senate, in course of an inquiry in aid of legislation, or when sitting as a court to determine election returns and qualifications of those claiming as members, has lawful power to enforce the attendance of any one not a member to give testimony.

**5. Witnesses ⊸1—Choice of process to secure attendance of witness is in discretion of court.**

Choice of process to secure attendance of witness by subpœna or attachment is a matter resting in the sound discretion of the court issuing the writ.

At Law. Habeas corpus by the United States, on the relation of Thomas W. Cunningham, against David S. Barry, Sergeant at Arms of the United States Senate, and another. Relator remanded.

J. Elwood Dukes, Otto Kraus, Jr., Benj. M. Golder, and Ruby R. Vale, all of Philadelphia, Pa., for relator.

Howard Benton Lewis, Asst. U. S. Atty., and George W. Coles, U. S. Atty., both of Philadelphia, Pa., and Paul Van Anda and George W. Wickersham, both of New York City, for defendants.

DICKINSON, District Judge. We were asked to allow this writ to be made returnable forthwith, but to continue the hearing to April 5, 1928, in order that the questions raised might be argued by counsel. This was accordingly done. At the conclusion of the argument at bar, we were asked to withhold a ruling, with leave to submit written briefs. This leave was granted, but, as the cause should be decided promptly, leave was further given either party to ask for a ruling at any time, whether the briefs had been filed or not. The cause is now ripe for a ruling.

We were further asked to notify counsel before the ruling to be made was handed down. This has been done in the form of a copy of the opinion proposed to be filed. We follow further our usual practice, for appellate and other reasons, not to enter a formal decree as part of the ruling indicated in the opinion, but to enter the de-

cree in accordance with the leave granted so to do, so that the terms and form of it could be settled after notice to counsel.

### Conclusion.

The conclusion reached is that the relator should be remanded. A due respect, however, for the industry, as well as ability, displayed by counsel, impels us to put of record a statement of the reasons which have led us to the conclusion reached.

### Discussion.

This is a hearing upon habeas corpus. There is a preliminary question into which we do not go, because it is not really raised. This is the jurisdictional power and duty of this court to inquire upon habeas corpus into the right of a relator to his liberty. This power and correlative duty we assume does not call for vindication, although it has been discussed with some fullness. The closest analogue of which we know is that of the type of cases in which the relator is being held under process to enforce his attendance for trial before another court, and emphatically a court of another and distant jurisdiction. The principles which control in such cases are simple, and the questions to be determined few. Every such relator has two rights. One is to a fair trial before an impartial tribunal, and sometimes one of the vicinage. The other right (which is often a right of greater practical importance) is to be saved the ignominy and expense of defending to an unjust and unfounded accusation. Both these rights are constitutional, in that they are assured to him by the fundamental law of every jurisdiction. His claim to the latter right is in the ordinary course of the administration of the criminal law assured to him by the finding of a commiting magistrate or a grand jury, but he has a further assurance in his right to invoke the judgment of a court through habeas corpus proceedings. The questions which then arise are commonly formulated as (1) identity; (2) probable cause; and (3) the jurisdictional power behind the process by which he is held.

Pursuing the analogue suggested, identity is here admitted, and so likewise are probable cause and jurisdiction, if the distinction next discussed is observed. These two questions are prone to overlap, if this distinction is not observed. Probable cause is nothing more than another name for the second right to which we have adverted. We have a firmer grasp of the real thought, if we present it to our minds in the form of the question of whether there is justification for putting the relator on trial. This is the question which the committing magistrate, the grand jury, and the court upon habeas corpus alike propound and answer. None of these tribunals have anything to do with the question of guilt. That is for the trial court. When the former question is framed as one of "probable cause," there is always danger that it will become the question of whether ground has been shown for a belief in the probable guilt of the relator, and thus become a question of the degree of strength of the proofs. Of course, sometimes, and indeed ordinarily, it comes practically to this; but the thought presented is kept clearer (at least to some minds) if presented as a question of justification for putting the relator on his trial.

[1] Nor do we understand there is any denial of the broad power of the Senate to conduct an inquiry through the judicial forms of compelling the attendance of witnesses from whom testimony is desired as an aid to legislation or when the Senate is sitting as a court to judge the election returns and qualifications of any one claiming membership in that body. At all events, McGrain v. Daugherty, 273 U. S. 135, 47 S. Ct. 319, 71 L. Ed. 580, 50 A. L. R. 1, is a sufficient citation to uphold the assertion of this power.

The petition for the writ of habeas corpus proceeds upon the fact theory that the relator had been adjudged by the Senate to have been guilty of the offense of a contempt of its lawful power and of its dignity, and to have been taken into custody as a punishment, or to have a sentence of punishment imposed. In other words, the process here is execution process in the general nature of a writ of capias ad satisfaciendum. We are hence asked to pronounce judgment, under the fact situation thus presented, upon the power of a Senate as a constituent of the Seventieth Congress to summarily convict one, not a member, of a past offense committed against the dignity of the Senate sitting as a constituent part of the Sixty-Ninth Congress.

There is further urged as part of the law of the land a proposition which we will formulate by a paraphrase of the language of the opinion in the Daugherty Case, supra. The proposition is as follows:

[2] The Senate does not possess a "general power of making inquiry into the private affairs of the citizen," nor to compel disclosures relating thereto. A witness in consequence may rightfully refuse to answer

questions relating to matters beyond the bounds of the lawful power of inquiry, or when the questions are not pertinent to the matter under inquiry.

This proposition of law is sought to be invoked and applied to the situation of this relator through the fact averments (1) that the head and front of the offending of the relator consists wholly in his refusal to answer impertinent and irrelevant questions directed wholly to his personal, private affairs, which have no relation to inquiries charged with any public interest; and (2) that the Senate, in convicting him of contumacy, has done so in disregard and violation of the law as above expounded. The truth is averred to be that the relator is, and at all times has been, ready and willing to testify as to all matters save only those in his refusal to answer which he has the support of the law.

[3] A number of other questions of grave importance and great interest have been argued with forceful emphasis and notable eloquence. Into none of them do we feel the call to go, because we do not find them to be in the case. In the first place, the character of the questions which have been addressed to the witness is a matter into which we could not go without ignoring the very distinction which we have sought to draw. It is the distinction between the propriety of a relator being put upon trial and the merits of the case when tried. The latter must be judged by the trial court; it is only the former upon which the court in the habeas corpus hearing can pass. This very situation was before the court in the Daugherty Case. It was there held that the propriety of no specific question was before the court. There is likewise none presented to us. We are further unable to make the finding that the relator is being deprived of his liberty as a punishment for an offense of which he has been convicted.

The return to the writ discloses that he had been taken into custody by authority of a warrant of arrest or attachment issued by the Senate of the United States in pursuance of a resolution, which reads as follows:

"Whereas, it appears from the report of the special committee investigating expenditures in senatorial primary and general elections that a witness, Thomas W. Cunningham, twice called before the committee making inquiry as directed by the Senate under S. Res. 195 of the Sixty-Ninth Congress, declined to answer certain questions relative and pertinent to the matter then under inquiry: Therefore be it—

"Resolved, that the president of the Senate issue his warrant commanding the sergeant at arms or his deputy to take into custody the body of the said Thomas W. Cunningham wherever found, and to bring the said Thomas W. Cunningham before the bar of the Senate, then and there or elsewhere, as it may direct, to answer such questions pertinent to the matter under inquiry as the Senate, through its said committee, or the president of the Senate, may propound, and to keep the said Thomas W. Cunningham in custody to await further order of the Senate."

[4, 5] As we analyze the facts, the only question presented is whether the Senate, in the course of an inquiry in aid of legislation, or when sitting as a court to determine the election returns and qualifications of those claiming the right to sit as members of that body, has lawful power to enforce the attendance of any one not a member to give testimony. This question we find to have been authoritatively answered in the cited case. Every court must have this power or cease to function, and the Senate must likewise possess it. The formal resolution declares that the attendance of the relator is required for this purpose. We are not asked to find, and surely could not find, that the real purpose was other than has been declared. The suggestion has, however, been made that the indicated power may be abused. No one could deny the existence of such a possibility. If, however, such a possibility was a reason for withholding power, none would ever be granted. None of the powers the possession of which is sanctioned by our Constitution nor even those expressly and in terms granted, are free from the theoretical possibility of abuse. The very same suggestion was advanced without avail in the Daugherty Case.

It is undeniable that the ordinary process to secure the attendance of a witness is by subpoena and that there is as a matter of common practice no resort in the first instance to attachment. The choice of the process, however, and when an attachment may issue, is a matter resting in the sound discretion of the court issuing the writ. Any person who was willing to attend as a witness and to testify, and who had given no indication of any intention to evade the service of a subpoena, or to disobey its mandate, but who without any justification was served with an attachment without excuse for the employment of physical force to drag him to the witness stand, would assuredly be given a sympathetic hearing by any court, if he asked to be relieved from imprisonment.

He could fairly and hopefully raise the question of the lawfulness of the curtailment of his freedom. No such question is, however, here raised. The intention to raise it has been expressly disclaimed.

The preamble to the resolution, which has been made the subject of severe criticism on other grounds, we read as a mere statement of the facts which, in the sound discretion of the Senate, justified the issuance of an attachment rather than a subpœna. That the Senate did not misjudge the attitude of the relator was confirmed by an incident of the habeas corpus hearing. Anticipating the point might be made, and to definitely get it out of the way, if not to be raised, the relator was asked, through his counsel, if he would give assurance of his attendance if the warrant of arrest or attachment were treated as a mere subpœna. The answer was an emphatic negative.

We find no fault with this answer, as we interpreted it as the wish of the relator (as is his right) to ask the judgment of this court upon the question of the lawful power of the Senate to enforce his attendance as a witness, in the language of the resolution, to testify in answer to such pertinent and proper questions as might be addressed to him. Our answer is that the Senate does possess this power.

This means that the relator should be remanded to the custody of the respondent, and a formal decree to that effect may be submitted.