(No. 79861.—

ROSAIRE M. NOTTAGE, d/b/a Nottage & Ward, Appellant, v. RICHARD J. JEKA, Appellee.

*Opinion filed May 31, 1996.*

Grund & Starkopf, of Chicago (David I. Grund and Richard S. Zachary, of counsel), for appellant.

William F. White, of White & White, of Downers Grove, for appellee.

William Ferguson and Martha Norman, of Wheaton, for *amicus curiae* Du Page County Bar Association.

Terrence K. Hegarty, Dennis A. Rendleman, Athena T. Taite, David P. Pasulka and Michael A. Metoyer, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, Rosaire M. Nottage, an attorney, d/b/a Nottage & Ward, filed an action in the circuit court of Cook County seeking recovery of attorney fees from defendant, Richard F. Jeka. The firm of Nottage & Ward had represented Jeka in post-decree proceedings following the dissolution of Jeka's marriage, and Nottage brought the instant action to recover compensation from Jeka for work performed in the course of those proceedings by Nottage and other attorneys in the firm. Following a bench trial, the judge found in Nottage's favor. Jeka appealed. The appellate court vacated the circuit court judgment and dismissed the action, concluding that Nottage could not maintain the present common law action because section 508 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508 (West (1992)) provides the sole recourse for the recovery of attorney fees in domestic relations matters. 274 Ill. App. 3d 235. We allowed Nottage's petition for leave to appeal (155 Ill. 2d R. 315(a)).

The procedural history of this case can be stated briefly. Nottage filed the present action in the circuit court of Cook County on July 1, 1993. In her complaint, she alleged that her firm, Nottage & Ward, and Jeka had entered into a retainer agreement for legal services on April 3, 1989, that she and her firm had performed their obligations under the contract, and that Jeka owed a balance of $4,238.72 in attorney fees. Attached to the complaint were copies of the signed retainer agreement and of the billing documentation prepared by the Nottage firm. The retainer agreement recited that it was

for representation of Jeka in certain post-decree matters in the circuit court of Du Page County. It appears that the firm withdrew from representation while the matter was still pending, and substitute counsel was then obtained. The record does not disclose the resolution of the Du Page County matter.

Jeka moved to dismiss the complaint. He first argued that the action was barred by an identical and pending claim filed by Nottage in the circuit court of Du Page County, where the post-decree proceedings had occurred. Jeka separately argued that, because the Du Page County matter remained pending, the Du Page court alone could exercise jurisdiction over the petition for fees. Finally, Jeka contended that the action was being brought in an inconvenient forum and asked that the cause be transferred to the circuit court of Du Page County under the doctrine of *forum non conveniens.*

The trial judge refused to dismiss the action. In a subsequent answer to the complaint, Jeka denied that he owed Nottage & Ward anything for their work and raised, as an affirmative defense, the contention that he had already paid the Nottage firm a total of $10,514 in fees, an amount that he believed was full and reasonable compensation for the lawyers' services. Jeka filed a request for a jury trial together with his answer to the complaint.

The trial judge, on his own motion, struck Jeka's jury demand. Following a bench trial, the court ruled in Nottage's favor on the claim and awarded $4,009.72 in damages, plus costs. No report of proceedings, bystander's report, or agreed statement of facts is included in the record on appeal; a written order, however, states that the judge found the rates charged by the Nottage firm to be reasonable and the bulk of the hours billed to the client to be properly established. The difference between the amount sought by Nottage and the amount

awarded by the trial judge apparently reflects the judge's disallowance of compensation for hours not properly established by the attorney.

Jeka appealed, and the appellate court vacated the circuit court judgment and dismissed Nottage's action. The court concluded that section 508 of the Illinois Marriage and Dissolution of Marriage Act was designed by the legislature to provide the sole means by which an attorney may recover a fee from a client for representation in a proceeding under the Act, and that any request for fees must therefore be maintained with the underlying domestic relations matter. Because the present action was not being prosecuted under section 508, the appellate court ruled that it must be dismissed.

In support of this holding, the appellate court pointed to a number of considerations that, it believed, demonstrated the legislature's intent to make section 508 an attorney's exclusive mode of recovery of fees in domestic relations matters. The appellate court observed that section 508, unlike a common law contract action, permits the allocation of attorney fees between spouses, so that responsibility for fees can be shifted from the less affluent spouse to the more affluent spouse. Additionally, the court believed that determining fees under the statute would enable the judge to consider the financial resources of the client in setting an appropriate award. The appellate court also noted that a petition for fees, if brought as part of the domestic relations case from which it arose, could be decided by the same judge who had heard the underlying matter and who would therefore already be familiar with the case. Conversely, the appellate court asserted that allowing the fee petition to go forward as a separate proceeding might place the case before a judge who did not customarily handle domestic relations cases and thus "may not have a daily familiarity with domestic relations cases

and the changing nuances and charges involved in billing for legal services under the Act." 274 Ill. App. 3d at 239. Finally, the appellate court believed that disposing of a fee claim with the underlying domestic relations case would promote judicial economy and would resolve with finality the various issues in the domestic relations matter. The court noted that the statute of limitations for actions on written contracts, including retainer agreements, is 10 years (735 ILCS 5/13—206 (West 1992)), a period the court deemed excessive in domestic relations cases.

Nottage filed a petition for rehearing, which was denied by the appellate court in an unpublished order, with one justice dissenting. We allowed Nottage's petition for leave to appeal. 155 Ill. 2d R. 315(a). The Illinois State Bar Association and the Du Page County Bar Association were granted leave to submit briefs as *amici curiae* in behalf of Nottage. 155 Ill. 2d R. 345.

Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a) (West 1992)) provides:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party, which award shall be made in connection with the following[.]"

Subsection (a) proceeds to list the services for which an award of attorney fees may be obtained under the Act. Section 508(b) authorizes the recovery of costs and legal fees from a party who, without cause or justification, refuses to comply with an order or judgment. Finally, section 508(c) authorizes the court to order that an award of fees be paid directly to the attorney or to the relevant party.

The question before us is one of statutory interpretation. The fundamental canon of construction is to ascertain and give effect to the intention of the legislature. *Varelis v. Northwestern Memorial Hospital*, 167 Ill. 2d 449, 454 (1995). Courts will look first to the words of the statute (*Metropolitan Life Insurance Co. v. Washburn*, 112 Ill. 2d 486, 492 (1986)), for the language used by the legislature is the best indication of legislative intent (*Kirwan v. Welch*, 133 Ill. 2d 163, 165 (1989); *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151 (1985)). When the statutory language is clear, no resort is necessary to other tools of interpretation. *Henry v. St. John's Hospital*, 138 Ill. 2d 533, 541 (1990). Moreover, courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the enactment. *People ex rel. Le-Gout v. Decker*, 146 Ill. 2d 389, 394 (1992); *In re Estate of Swiecicki*, 106 Ill. 2d 111, 120 (1985).

We believe the appellate court erred when it concluded that section 508 of the Marriage and Dissolution of Marriage Act is the sole means by which an attorney may recover a fee from a client in a domestic relations matter, to the exclusion of a common law action for contract damages, such as that brought in this case. A consideration of the statutory language, as well as of the practical difficulties that would result from the appellate court's holding, persuades us that the legislature did not intend that result.

We find nothing in the plain language of the statute to indicate that the legislature intended that the remedy provided by section 508(a) would be an attorney's sole avenue of recourse against a client, precluding any subsequent remedy brought after the termination of the underlying case. As this court stated in *Kosicki v. S.A. Healy Co.*, 380 Ill. 298, 302 (1942), "Where *** a new

remedy is given by statute, and there are no negative words or other provisions rendering it exclusive, it will be deemed to be cumulative only and not to take away prior remedies." In its operation, section 508(a) supplements whatever other remedies an attorney might have in obtaining fees from a client. Nothing in the statutory language suggests that the legislature also intended to eliminate common law actions for fees, like the one at issue here.

The statute employs the term "may" in authorizing the trial court to award fees to an attorney: "The court *** may order any party to pay a reasonable amount for his own costs or attorney's fees ***." "May" is normally construed in a permissive rather than a mandatory fashion (*People v. Ullrich*, 135 Ill. 2d 477, 484 (1990)), though its precise meaning can depend upon the meaning of the statute as a whole (*Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 325 (1989)). Nottage argues that "may" is being used in a permissive sense in section 508(a), demonstrating that the provision is not an attorney's exclusive remedy.

Jeka suggests that the term here simply means that the court might or might not enter an award for fees, depending on the facts and circumstances of the case. Jeka maintains that an attorney must either pursue his claim for fees under section 508 or permanently forgo it, and that the use of the term "may" does not by itself demonstrate that the legislature understood the provision to be optional. Even if Jeka is right and the term "may" is, at best, inconclusive regarding the legislature's intent, still he is unable to point to any language in the statute in support of his contention that the legislature intended that section 508(a) would serve as the exclusive means by which an attorney may recover a fee from a client for representation in a domestic relations dispute.

Jeka correctly observes that the provision in section

508(a) authorizing an attorney to recover fees from the attorney's own client was designed to promote judicial economy by allowing the request for fees to be maintained in the underlying domestic relations matter. *In re Marriage of Pagano*, 154 Ill. 2d 174, 183 (1992). Unlike the statutory scheme that preceded it, the Illinois Marriage and Dissolution of Marriage Act, through section 508, expressly enables an attorney to seek a fee from the attorney's own client in the underlying action. Ill. Ann. Stat., ch. 40, par. 508, Historical & Practice Notes, at 637 (Smith-Hurd 1980). Section 15 of the former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 16) permitted one spouse to obtain from the other an award for fees to prosecute or defend the action. Under the former law it had been held, however, that an attorney could not file a claim for a fee against the attorney's own client because the divorce court lacked jurisdiction to resolve a claim of that nature. *In re Petition of Neiman*, 8 Ill. App. 3d 454 (1972); *Pressney v. Pressney*, 339 Ill. App. 371 (1950). This result was later questioned, following the adoption of the 1970 Constitution (*Seniuta v. Seniuta*, 49 Ill. App. 3d 329, 331 (1977) ("Under the Illinois Constitution of 1970, all differences between law and equity were abolished and a circuit judge may hear any justiciable matter")), and section 508(a) expressly permits an attorney to present his claim in the same proceeding.

In this respect, section 508 differs from the corresponding provision of the Uniform Marriage and Divorce Act, after which section 508 was patterned; section 313 of the Uniform Act is purely a fee-shifting provision, authorizing only petitions by one party to obtain fees from the other party. Uniform Marriage and Divorce Act § 313, 9A U.L.A. 450 (1987); Ill. Ann. Stat., ch. 40, par. 508, Historical & Practice Notes, at 637 (Smith-Hurd 1980) ("Subsection (a) is intended to

promote judicial economy by obviating the need for an attorney to sue his own client for attorney's fees in a separate suit. Section 313 of the Uniform Act does not contain this express authority for the court to order a party to pay his own attorney's fees and costs"). As we view it, however, the principal purpose of section 508(a) is to enable a court to shift liability for attorney fees from one party to another; secondarily, the statute permits an attorney to submit a claim for fees against a client.

The appellate court has previously held that a petition for fees initiated by an attorney against a client during the pendency of a related domestic relations matter must be brought in the underlying case and prosecuted as part of the same action. *Gitlin v. Hartmann*, 175 Ill. App. 3d 805 (1988); *In re Marriage of Baltzer*, 150 Ill. App. 3d 890 (1986). Without addressing the merits of those decisions, we do not believe that the same concerns of judicial economy that prompted the development of the rule expressed in *Gitlin* and *Baltzer* must also bar an independent action brought after the conclusion of the underlying case, as the appellate court determined here. See *Myers v. Brantley*, 204 Ill. App. 3d 832, 835 (1990).

Indeed, we believe that the legislature would have clearly stated its intent if it had proposed to bar independent actions for fees in those circumstances, and we decline to imply a legislative intent where none is expressed. The practical difficulties of the appellate court's approach and the potential conflicts between an attorney and client under such a regime are many. See *In re Marriage of Pitulla*, 141 Ill. App. 3d 956, 961 (1986). To take but one example: An attorney representing a client who agrees to pay a fee in installments or whose ability to pay a fee is doubtful would be faced with the quandary of simply continuing the representation

without submitting a claim for fees, with the attendant risk of later being barred from bringing an action against the client to recover the unpaid portion of the fee, of prolonging the course of the underlying proceeding until the fee had been entirely paid, or of submitting a claim in the underlying proceeding at the risk of delaying the client's appeal from the underlying judgment. Requiring an attorney to choose among the preceding alternatives would not be conducive to vigorous representation. As the appellate court noted in *In re Marriage of Burton*, 203 Ill. App. 3d 890, 893 (1990), in distinguishing *Gitlin*'s requirement that a fee request be joined with the pending, underlying proceeding from which it arose, "We do not believe that *Gitlin* should be read as enacting an outright bar to the pursuit of attorney fees in any forum other than a dissolution action. To read it so could cause it to become a sword aimed straight at the heart of attorney-client relationships."

In support of its holding, the appellate court likened the treatment of fees under the Marriage and Dissolution of Marriage Act to claims for sanctions in civil actions, which must be brought as part of the underlying action. *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 467-68 (1990); 134 Ill. 2d R. 137. The appellate court reasoned that requests for fees, whether directed at the opposing party or at the attorney's own client, must similarly be brought as part of the related case. 274 Ill. App. 3d at 243-44. We do not agree. A request for sanctions is readily distinguishable from an attorney's claim for fees against his or her own client. In some instances, an attorney's claim for fees will not arise until much later, after the case has concluded, when the client declines to make further payments toward satisfaction of an outstanding fee. Conduct giving rise to a request for sanctions, in contrast, is already known at the time of the underlying litigation.

The appellate court's stated concern that failure to calculate fees under the guidelines of section 508 would ignore certain vital criteria (274 Ill. App. 3d at 239-40) is also misplaced. A claim for fees, whether made under section 508 or in a separate common law action, as here, must satisfy certain professional standards. Rule 1.5 of the Illinois Rules of Professional Conduct requires that a fee for legal services be reasonable, and the rule specifies standards relevant to that determination. 134 Ill. 2d R. 1.5. Under the analysis proposed by the appellate court, a judge setting a reasonable fee under section 508(a) would be allowed to take into account the financial resources of the client. We question the relevance of that consideration, however, when the fee is being sought from the attorney's own client. As the appellate court noted in *In re Marriage of Ransom*, 102 Ill. App. 3d 38, 41 (1981), in rejecting the contention of a client that the court in a proceeding under section 508(a) erroneously failed to consider her resources in determining the fee she owed her attorney, "Regardless of the respective financial circumstances of the spouses, an attorney is still entitled to seek payment for his services from his own client, and the legislature in providing this procedure did not intend that it be conditioned upon the financial abilities of the parties." We believe that a consideration of financial resources is peculiarly suited to cases in which one party seeks contribution for attorney fees from the opposing party, rather than when the fee is imposed against the attorney's own client.

The appellate court also mentioned, in support of its holding, that disposition of the fee issue as part of the underlying proceedings would resolve with finality the questions in the case, and would place the issue before a judge who is already acquainted with the litigation at hand and who is familiar with domestic relations mat-

ters. These concerns may have some merit in some circumstances, but they do not overcome the complete absence of any language in section 508(a) indicating that the legislature intended for the provision to provide the exclusive remedy of an attorney in a fee action against a client. In addition, we believe that the appellate court overstates the supposed benefits of its approach. We have every confidence that judges who do not normally handle domestic relations matters are fully capable of resolving fee disputes involving representation in those cases. Moreover, there is no guarantee, particularly in a high-volume court, that a fee petition will be heard by the same judge who ruled on the principal issues in the underlying case.

In sum, we find nothing in the plain language of section 508(a) to suggest that the legislature intended that the statute would provide the exclusive means by which an attorney representing a party in a domestic relations case may recover a fee from a client. As we have noted, a number of practical considerations counsel against such an interpretation.

Jeka also briefly argues that Nottage's prior filing of a fee petition in Du Page County was an additional bar to the separate Cook County fee action and, further, that the trial court improperly struck his jury demand. Our consideration of these issues is handicapped, however, by the absence of a report of proceedings, agreed statement of facts, or bystander's report from the circuit court. In addition, documentation that would support these arguments is not found in the common law record. Jeka, as appellant from the circuit court judgment, had the obligation to make a record that would support his claims of error, and he has not. *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984).

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*