THE PEOPLE *ex rel.* JAMES RYAN, Attorney General, *et al.,* Plaintiff-Appellant, v. STONEHEDGE, INC., Defendant-Appellee.

Second District   No. 2—96—0620

Opinion filed May 22, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Mary E. Welsh and Karen J. Dimond, Assistant Attorneys General, of counsel), and Gary W. Pack, State's Attorney, of Woodstock (Dolores A. Duffy, Assistant State's Attorney, of counsel), for appellant.

Mary C. Bryant, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The plaintiff, the People of the State of Illinois, filed a three-count complaint against the defendant, Stonehedge, Inc., alleging that deicing salt stored on Stonehedge's industrial property leaked into the area's groundwater supply, thereby contaminating it. The trial court ruled that there was no triable issue of fact that supported the plaintiff's argument regarding each of the counts and granted the defendant's motion for summary judgment, from which the plaintiff appeals. We affirm in part, reverse in part, and remand.

The following facts are taken from the plaintiff's complaint. At all times relevant to this case, Stonehedge was in the business of spreading deicing salt, which has sodium chloride as its principal constituent, during winter months for snow removal in the western and northwestern Chicago suburban area. In fall 1988, Stonehedge began storing deicing salt on its property and continued to store salt until approximately fall 1992. Stonehedge stored the deicing salt on the ground and without a concrete pad or cover.

On several occasions between December 16, 1991, and December 7, 1992, the McHenry County Department of Health analyzed the water from wells at several homes adjacent to the site where the deicing salt was stored. The tests revealed high chloride levels in the groundwater in the wells. The plaintiff subsequently filed a complaint against Stonehedge, alleging that the defendant's pile of deicing salt was leaking into the groundwater.

Count I of the plaintiff's complaint alleged that Stonehedge's causing the discharge of the salt into the groundwater violated sections 12(a) and 12(d) of the Environmental Protection Act (Act) (415 ILCS 5/12(a), (d) (West 1994). Count II alleged that, by allowing the salt to leak through the ground, Stonehedge altered the physical, chemical, and biological qualities of the water so as to render it unfit for use as potable water as measured by the public water supply regulations. See 35 Ill. Adm. Code § 620.410(a) (1996). Count III alleged that, by depositing the deicing salt within 200 feet of two existing potable water supply wells, Stonehedge violated section 14.2(a) of the Act. See 415 ILCS 5/14.2(a) (West 1994). The plaintiff sought injunctive relief and other civil remedies under all three counts.

The defendant filed a motion to dismiss the plaintiff's complaint, which was denied by the trial court. The defendant then filed a motion for summary judgment on each of the plaintiff's counts. The trial court granted the defendant's motion for summary judgment on all three counts of the plaintiff's complaint. We note that a court reporter was not present at the hearing to record the arguments and ruling made on this date. In its order, however, the trial court commented that, although it did not know how the plaintiff could prove its case, the defendant's motion was granted as a matter of law.

On appeal, the plaintiff contends that the court's order is erroneous because a genuine issue of material fact exists regarding each of the counts in its complaint.

■ Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bol-*

*ingbrook Equity I Ltd. Partnership v. Zayre of Illinois, Inc.*, 252 Ill. App. 3d 753, 764 (1993). While plaintiffs need not prove their cases at the summary judgment stage, they must come forward with some facts that would arguably entitle them to judgment. *Jones v. Minster*, 261 Ill. App. 3d 1056, 1059 (1994). Indeed, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard*, 154 Ill. 2d at 102. Finally, our review of the trial court's entry of summary judgment is *de novo. Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

■ We turn first to count I of the plaintiff's complaint. Count I alleges that the defendant stored deicing salt on its property without a concrete pad or cover, thereby allowing the salt to seep into the ground and cause water pollution in violation of sections 12(a) and 12(d) of the Act. In pertinent part, section 12 provides:

"No person shall:

(a) Cause or threaten or allow the discharge of any contaminants into the environment in any State so as to cause or tend to cause water pollution in Illinois, either alone or in combination with matter from other sources, or so as to violate regulations or standards adopted by the Pollution Control Board under this Act.

\* \* \*

(d) Deposit any contaminants upon the land in such place and manner so as to create a water pollution hazard." 415 ILCS 5/12(a), (d) (West 1994).

In its motion for summary judgment, the defendant made several arguments regarding count I. Although the trial court stated that it was granting the defendant's order as a matter of law, it did not explain upon which ground it was granting summary judgment. As our review of the trial court's entry of summary judgment is *de novo*, however, we will address each of the defendant's arguments. See *Monticello*, 277 Ill. App. 3d at 701.

■ First, the defendant contended that section 12 of the Act does not apply to the instant case because only the Illinois Groundwater Protection Act (415 ILCS 55/1 *et seq.* (West 1994)) can be used to control groundwater in Illinois. In its reply to the plaintiff's response for summary judgment, however, the defendant abandoned this argument and stated that the Act could apply to groundwater, but only the *State's* groundwater. Accordingly, since the plaintiff's complaint alleges only that private wells were contaminated, the Act does not apply in this case.

We disagree with the defendant's characterization of the plaintiff's complaint. Count I of the plaintiff's complaint alleges that the defendant's deicing salt contaminated the State's groundwater. As proof of this contamination, the plaintiff refers to chloride levels of water in nearby wells that contain this groundwater. Accordingly, although the plaintiff refers to contaminated wells, the water in the wells is the groundwater that the plaintiff alleges the defendant contaminated. Therefore, the plaintiff's complaint does allege that the State's groundwater is polluted and section 12 of the Act applies to this case.

Second, the defendant argued that the plaintiff has not brought forth any evidence that the Stonehedge site is contaminated. The defendant contended that the plaintiff did not conduct any tests on the Stonehedge site; consequently, there is no proof that the site is contaminated. Further, the defendant pointed to the plaintiff's expert's deposition testimony as proof that the deicing salt did not seep through the ground and contaminate the groundwater.

■ This court first notes that, at the hearing on the plaintiff's motion to reconsider, the trial court commented that it did not grant summary judgment on count I on this basis. We agree with the trial court's decision. As the plaintiff points out in its briefs, its complaint does not allege that the Stonehedge site storing the deicing salt was contaminated. Instead, the complaint alleges that the deicing salt leaked into the groundwater, thereby contaminating it. The defendant does not refer this court to any statute, regulation, or other evidence that states that a court must find that a site is contaminated before it can conclude that the site contaminated groundwater. Accordingly, that the plaintiff did not sample the Stonehedge site, and did not produce evidence that the Stonehedge site was contaminated, does not affect the merits of this action.

Moreover, a review of the pages of the deposition attached to the defendant's motion for summary judgment demonstrates that the well water referred to by the plaintiff's expert was not necessarily free from groundwater contamination. When asked whether the test revealed that the groundwater in a certain downgradient well was contaminated, the expert responded that he "would have to look further at the file" to be able to answer the question. When asked the question a second time, the plaintiff's expert repeated his response that he would have to look at his file and the history of the samples taken from that well to answer the question. Finally, when pressed for an answer the third time, the expert stated that he did not believe he had data available that could demonstrate that the water in the well was contaminated, but that he "would have to go back and look

at the file." We find this testimony insufficient to establish as a matter of law that the groundwater in that downgradient well was uncontaminated. Instead, this testimony shows that the expert was unable to answer the attorney's question regarding the quality of water in a certain well.

■ Third, the defendant argued that the plaintiff failed to follow the proper testing procedures used to demonstrate noncompliance with the groundwater standard. Specifically, the defendant claimed that the plaintiffs did not comply with the methods set forth in section 620.240(e)(1) of title 35 of the Illinois Administrative Code (Code) (35 Ill. Adm. Code § 620.240(e)(1) (1996)), which outlined the conditions of collecting samples of groundwater under a potential primary source or secondary source.

The plaintiff acknowledges that it did not comply with section 620.240(e) of the Code. The plaintiff, however, explains that subsection (e) does not apply to this case because the plaintiff did not monitor groundwater underlying a potential primary source or secondary source. Instead, the plaintiff argues that it was required to follow, and followed, section 620.505(a)(5), which applies to groundwater that is collected from a well.

Section 620.505(a) provides:

"Compliance with standards at a site is to be determined as follows:

\* \* \*

5) At any point at which groundwater monitoring is conducted using any water well or monitoring well that meets the following conditions:

A) For a potable well other than a community water supply well, a construction report has been filed with the Department of Public Health for such potable well, or such well has been located and constructed (or reconstructed) to meet the Illinois Water Well Construction Code [citation]." 35 Ill. Adm. Code § 620.505(a) (1996).

There is no dispute that the groundwater sampled in the instant case came from two water wells downgradient from Stonehedge's property. Accordingly, we agree with the plaintiffs that in the instant case section 620.505(a)(5)(A) applies instead of section 620.240(e)(1). We find, however, that there is no evidence that the plaintiff has complied with section 620.505(a)(5)(A).

Under section 620.505(a)(5)(A), a water well can be monitored for groundwater quality if a construction report has been filed with the Department of Public Health or if the well meets the Illinois Water Well Construction Code (Well Code) (77 Ill. Adm. Code § 920.10 *et seq.* (1996)). See 35 Ill. Adm. Code § 620.505(a)(5)(A) (1996). The plaintiff

acknowledges that there are not any construction reports on file concerning the wells at issue. Instead, the plaintiff contends that the wells meet the second part of the test outlined in section 620.505(a)(5), as they are wells that meet the Well Code.

There is no evidence, however, that the wells in question comply with the Well Code. The plaintiff crafts the unique argument that the wells are in compliance with the Well Code while at the same time acknowledging that the wells are not in compliance with the *requirements* in the Well Code. Indeed, the plaintiff admits that the wells do not meet the standards or requirements set out by the Well Code for a well. The plaintiff maintains, however, that because the wells existed *before* the Well Code was enacted, the wells were "grandfathered" in as being in compliance with the Well Code, even if they do not meet the Well Code's requirements.

In support of its argument, the plaintiff refers this court to section 920.110 of the Well Code (77 Ill. Adm. Code § 920.110 (1996)). According to section 920.110, "[w]ells constructed prior to the adoption of this Part may not meet the criteria established. When a well is to undergo modification, reconstruction, or repair, the work shall include those changes necessary to make the well conform to this Part." 77 Ill. Adm. Code § 920.110(a) (1996). The plaintiff contends that this section provides that, because the wells in the instant case existed before the Well Code was enacted, they are in compliance with the Well Code for the purposes of groundwater monitoring. We disagree.

The fundamental canon of statutory construction is to ascertain and give effect to the intention of the legislature. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). The most reliable indicator of legislative intent is the language of the statute, which is given its plain and ordinary meaning. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 237 (1996). Where the language of the statute is clear and unambiguous, we must give it effect as written, without reading into it exceptions, limitations, or conditions that the legislature did not express. *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996). Courts should not, under the guise of statutory construction, add requirements or impose limitations that are inconsistent with the plain meaning of the statute. *Nottage*, 172 Ill. 2d at 392.

Using these principles, this court must determine whether the legislature intended for wells that do not comply with the criteria of the Well Code to be wells from which samples may be taken to determine whether the groundwater is in compliance with the groundwater quality standards. We find that a reasonable reading of the statute shows that the legislature did not intend this result.

This court agrees with the plaintiff that the Well Code acknowledges that existing wells may not meet the criteria established in the Well Code. See 77 Ill. Adm. Code § 920.110(a) (1996). We do not believe, however, that such an acknowledgement signifies that all existing wells, even though in noncompliance with the Well Code's requirements, are automatically considered wells in compliance with the Well Code. Instead, we find that section 920.110's purpose was to acknowledge that the wells in existence at the time the Well Code was enacted did not have to meet the Well Code requirements unless or until the well was modified. Then, as soon as a well was modified in some way, it would have to be modified in such a manner that it complied with the Well Code criteria. See 77 Ill. Adm. Code § 920.110(a) (1996).

A look at section 620.505(e)(5)(A) supports our analysis. In section 620.505(e)(5)(A), the Code explains that a well meets the conditions to test for contamination if the well has been constructed or *reconstructed* to meet the Well Code. If all existing wells were automatically considered to be in compliance with the Well Code for the purposes of testing for contamination, there would be no reason for the legislature to refer to wells *reconstructed* to meet the Well Code criteria. Consequently, for the word "reconstructed" to have any meaning under the Well Code, existing wells cannot be considered to be automatically in compliance with the Well Code. See *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 362-63 (1986) (courts will avoid the construction of a statute which would render any part of it meaningless).

Therefore, we find that the portion of the Well Code that states that existing wells may not meet the Well Code's criteria merely provides that an existing well need not be modified to meet the criteria under the Well Code. Instead, existing wells would only be required to meet the criteria in the Well Code at the time that they were modified, reconstructed, or repaired. See 77 Ill. Adm. Code § 920.110 (1996). In this case, the wells at issue existed at the time the Well Code was enacted and were never modified, reconstructed, or repaired to meet the Well Code criteria. Accordingly, they do not meet the Well Code's requirements for testing for contaminated groundwater. Thus, we find that the plaintiff's groundwater samples cannot be used to determine whether the groundwater in those wells was contaminated, and, if so, whether the water was contaminated by the defendant's deicing salt. Consequently, the trial court's grant of summary judgment was proper concerning count I.

■ Count II of the plaintiff's complaint also depends on the groundwater samples taken from the wells that we have deemed not

in compliance with the Well Code. Therefore, we find that summary judgment was properly granted also regarding count II.

Count III of the plaintiff's complaint alleges that Stonehedge violated section 14.2 of the Act by placing at least 50,000 pounds of deicing salt in a pile, which qualifies as a new potential secondary source (415 ILCS 5/3.60(5) (West 1994)), within 200 feet of two existing water supply wells (see 415 ILCS 5/14.2 (West 1994)). Stonehedge contends, however, that it is not a "new" potential secondary source and that the plaintiff has not brought forth any evidence that it ever stored more than 50,000 pounds of deicing salt on its property.

There is no dispute that a potential secondary source is a unit, facility, or site that stores or accumulates at any time more than 50,000 pounds of any deicing agent. See 415 ILCS 5/3.60(5) (West 1994). Further, both parties agree that a "new" potential secondary source under the Act is a potential secondary source that was not in existence at its location as of July 1, 1988. See 415 ILCS 5/3.60(6)(i) (West 1994). The parties disagree, however, as to whether the Stonehedge site meets both of these definitions.

First, the defendant argues that it is not a potential secondary source because it has never stored more than 50,000 pounds of deicing salt on its site. Stonehedge contends that its president stated in an affidavit that, based on his personal knowledge and upon the records, there was never as much as 50,000 pounds of deicing salt stored on the facility. Accordingly, the burden was upon the plaintiff to present facts contrary to the affidavit. Since the plaintiff has failed to bring forth any facts that dispute the facts in the president's affidavit, however, the defendant's affidavit is uncontested and the material facts therein must be accepted as true. See *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 381 (1974). Therefore, Stonehedge argues, the trial court correctly found that, as a matter of law, Stonehedge never stored more than 50,000 pounds of deicing salt on its property.

The plaintiff acknowledges that it cannot rely on its pleadings if the defendant has filed a motion for summary judgment with affidavits or depositions attached to support its allegations. The plaintiff maintains, however, that there are not any affidavits or depositions in the record that support the defendant's allegation that it has never stored more than 50,000 pounds of deicing salt on its property. Specifically, the plaintiff states that the affidavit referred to by the defendant was attached to an earlier motion to dismiss that was later withdrawn. Consequently, the plaintiff maintains that the defendant has not brought forth any evidence supporting its allegation that Stonehedge has never stored more than 50,000 pounds on its

site, and the plaintiff is entitled to rely on its pleadings to create a question of material fact.

We agree with the plaintiff that the record lacks any evidence that Stonehedge never stored more than 50,000 pounds of deicing salt on its property. As the plaintiff maintains, the affidavit Stonehedge refers to was attached to a motion to dismiss that was later withdrawn. Indeed, we note that the trial court's order granting the defendant's motion to withdraw the motion to dismiss provides explicitly that the defendant's motion to withdraw its affidavit is also allowed. The record shows that Stonehedge never refiled the affidavit. Further, Stonehedge does not contend that it ever refiled the affidavit or that any other document it filed in its motion for summary judgment supports its position that it never stored more than 50,000 pounds of salt on its property.

As a result, we find that the plaintiff's allegations contained in its pleadings that Stonehedge was a potential secondary source because it stored over 50,000 pounds of deicing salt on its property remains a question of fact that precludes summary judgment on that issue. See *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 846 (1995) (a party opposing a motion for summary judgment need not file any counteraffidavits and may rely solely upon the pleadings to create a material question of fact until the movant supplies facts that would clearly entitle him to judgment as a matter of law).

Second, Stonehedge contends that, even if a question of material fact exists as to the amount of salt it had on its facility, summary judgment was proper because the record demonstrates that it was not a "new" potential secondary source as a matter of law. Stonehedge argues that it attached portions of deposition testimony to its motion for summary judgment that show that Stonehedge has been storing deicing salt on its facility since 1987. Therefore, Stonehedge maintains that since it has been storing salt before July 1, 1988, it cannot be considered a "new" source. We disagree.

We note that the defendant has fashioned an interesting argument regarding this count of the plaintiff's complaint. On one hand, Stonehedge argues that it never has stored more than 50,000 pounds of deicing salt on its property. On the other, Stonehedge contends that it cannot be a new source because it has stored more than 50,000 pounds of deicing salt on its facility prior to July 1, 1988. Nevertheless, we find the record inadequate to determine that, as a matter of law, Stonehedge is not a new potential secondary source.

Under the Act, a new potential secondary source is a potential secondary source that was not in existence as of July 1, 1988. In this case, the storage of more than 50,000 pounds of deicing salt is the

event that qualifies Stonehedge as being a potential secondary source. Accordingly, if, as the plaintiff alleges, Stonehedge first stored or accumulated more than 50,000 pounds of deicing salt after July 1, 1988, it would be a "new" potential secondary source. In other words, Stonehedge's evidence that it stored deicing salt on its site prior to July 1, 1988, is irrelevant concerning the issue of whether Stonehedge is a new potential secondary source. Instead, the only relevant inquiry is whether Stonehedge stored or accumulated more than 50,000 pounds of deicing salt before July 1, 1988. See 415 ILCS 5/3.60(5) (West 1994).

The defendant has not produced any evidence that it stored more than 50,000 pounds of deicing salt on its facility prior to July 1, 1988. Consequently, the plaintiff did not have the burden of producing contrary evidence and the question of whether the defendant is a new potential secondary source remains a question of fact for the trier of fact to decide. See *Malone*, 271 Ill. App. 3d at 846 (party opposing a motion for summary judgment need not file any counteraffidavits to create a material question of fact unless the moving party presents evidence that precludes any possible liability).

In conclusion, we find that the trial court's order granting summary judgment for the defendant on counts I and II of the plaintiff's complaint was proper. We find, however, that the record was insufficient to establish, as a matter of law, that the defendant never stored more than 50,000 pounds of deicing salt on its property and that the defendant was not a new potential secondary source. Accordingly, the court's grant of summary judgment regarding count III was erroneous and is reversed.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

GEIGER, P.J., and THOMAS, J., concur.