*In re* MARRIAGE OF WAYNE LUCHT, Petitioner-Appellee, and ERROLYN JOYCE LUCHT, Respondent-Appellant.

First District (3rd Division)   No. 1—97—2937

Opinion filed September 30, 1998.

William J. Arendt and Matthew J. Cozzi, both of Field, Golan & Swiger, of Chicago, for appellant.

William G. Clark, Jr., & Associates, Ltd., of Chicago (William G. Clark, Jr., and Lisa Marie Zahn, of counsel), for appellee.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:
We are asked to deviate from the holding in *Watson v. Watson*, 335

Ill. App. 637, 82 N.E.2d 671 (1948), that an attorney may not file a petition for attorney fees in a divorce action after the case has been voluntarily dismissed, even though the petition is filed within 30 days of the dismissal. The trial court followed *Watson* and refused to entertain the petition. We affirm.

Wayne Lucht filed a petition for dissolution of marriage on August 9, 1996. Six days before the scheduled trial date, June 2, 1997, he moved for voluntary dismissal. The trial court granted the petition. Respondent Errolyn Joyce Lucht then moved for leave to file a petition for attorney fees. The motion was denied. On June 23, 1997, respondent moved to vacate the order denying her petition for attorney fees. The trial court denied the motion, and it is from that order the respondent filed this timely appeal under Supreme Court Rule 303 (155 Ill. 2d R. 303(a)(1)).

Respondent argues on appeal that she should have been allowed to file a petition for attorney fees even though the dissolution proceedings were voluntarily dismissed. She relies on *Nottage v. Jeka*, 274 Ill. App. 3d 235, 653 N.E.2d 803 (1995), *rev'd*, 172 Ill. 2d 386, 667 N.E.2d 91 (1996) (*Nottage I*). In *Nottage I*, the plaintiff successfully sued the defendant for breach of contract to recover attorney fees from a former client in a domestic relations case. The defendant appealed, arguing that section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(a) (West 1996)) (the Act) was the exclusive remedy available to recover attorney fees under the Act. The appellate court agreed. After holding that section 508(a) was the attorney's exclusive avenue for seeking attorney fees, the court elaborated on the availability of section 508(a) petitions even after the dismissal of dissolution proceedings. The court departed from. *Watson v. Watson*, 335 Ill. App. 637, 82 N.E.2d 671 (1948), and *In re Marriage of Erby*, 84 Ill. App. 3d 672, 406 N.E.2d 79 (1980), where we held that a trial court may not consider a petition for attorney fees after a divorce case has been voluntarily dismissed. See also *In re Marriage of Birt*, 159 Ill. App. 3d 281, 284, 512 N.E.2d 390 (1987); *In re Marriage of Reczek*, 95 Ill. App. 3d 220, 420 N.E.2d 161 (1981) (where *Watson* was followed). In *Watson*, we explained that "[p]ublic policy forbids that parties to a divorce suit should be kept in a state of hostile litigation" after the divorce has been dismissed. *Watson*, 335 Ill. App. at 641.

In rejecting *Watson* and *Erby*, the *Nottage I* court reasoned:

"It is unassailable that where a trial court has subject matter jurisdiction of a case and personal jurisdiction over the parties and their attorneys, it retains that jurisdiction until 30 days have expired from the time of a dismissal. [Citations.] As an irrefutable corollary, so long as a section 508 petition is filed while an underly-

ing action is pending or within 30 days from a dismissal of the underlying action, the trial court has jurisdiction to hear, decide and rule on the section 508 petition. (*Cf. In re Marriage of Dague* (1985), 136 Ill. App. 3d 297, 300, 483 N.E.2d 322; *In re Marriage of Conway* (1986), 139 Ill. App. 3d 1062, 1065-66, 487 N.E.2d 1240.)" *Nottage*, 274 Ill. App. 3d at 242.

Our supreme court reversed *Nottage I*, not because of the analysis of subject matter jurisdiction, but because it held that section 508(a) was not an exclusive remedy and did not preclude an attorney from bringing a separate breach of contract suit to recover fees. *Nottage v. Jeka*, 172 Ill. 2d 386, 392-98, 667 N.E.2d 91, 93-96 (1996) (*Nottage II*). Respondent now argues that the part of *Nottage I* holding that an attorney may file a section 508(a) petition within 30 days of a voluntary dismissal remains good law, in spite of the supreme court's reversal and finding that section 508(a) was not an exclusive remedy. We disagree.

*Nottage I*'s discussion of *Watson* and *Erby* was compelled by the court's threshold assumption that section 508(a) was the exclusive remedy for the recovery of fees in a divorce action. Once that position was taken, the court was compelled to deviate from *Watson* or leave a lawyer with an uncollected fee without a remedy. Once the supreme court found that section 508(a) was not an exclusive remedy, the need to deviate from the holding in *Watson* and *Erby* was unnecessary. We agree with the reasoning of the trial court that if *Nottage I* had allowed the breach of contract suit, there would have been no need to address *Watson* and *Erby*.

■ We disagree, however, with the language in *Erby* suggesting that a postdismissal petition for attorney fees in divorce cases is barred, not only for the policy reasons set out in *Watson*, but because the court lacks subject matter jurisdiction. See *Erby*, 84 Ill. App. 3d at 676. In that respect, *Nottage I* was correct. Subject matter jurisdiction addresses the scope of the circuit court's power to decide cases granted under the Illinois Constitution and Illinois statutes. See Ill. Const. 1970, art. VI, § 9; *In re Chiara C.*, 279 Ill. App. 3d 761, 765, 665 N.E.2d 404 (1996). But sometimes public policy requires that a trial court decline to exercise jurisdiction. See *Watson*, 335 Ill. App. 637; *Barrows v. Northwestern Memorial Hospital*, 123 Ill. 2d 49, 57, 525 N.E.2d 50 (1988).

Respondent quarrels with the policy announced in *Watson*. She argues that prohibiting an attorney from filing a petition for attorney fees within 30 days of a voluntary dismissal "[draws] unnecessary and unwarranted distinctions between dissolution actions and all other[s]." She also argues that an "unwarranted" distinction is drawn

between dissolution proceedings that are voluntarily dismissed and those that are involuntarily dismissed. *Cf. In re Marriage of Dague*, 136 Ill. App. 3d 297, 300, 483 N.E.2d 322 (1985) (petition for attorney fees allowed after dismissal because petitioner died).

■ The distinctions are not unwarranted. Illinois has long recognized a policy of preserving the marital relationship. At times the policy has been invoked at a cost to other legal interests. See, *e.g., In re Marriage of Malec*, 205 Ill. App. 3d 273, 289, 562 N.E.2d 1010 (1990) (attorney may not recover on a contingency fee agreement because the interest of preserving a marriage outweighs possible unjust enrichment concerns). The policy set out in *Watson* encourages the nonlegal resolution of marital disagreements and helps couples to disentangle from litigation once they have decided not to divorce.

■ Respondent contends that the parties here have not "reconciled," rendering the policy objective of *Watson* futile. Nothing in the record, other than the attorney's remark in appellate argument, reveals whether the parties have reconciled. What is clear from the record is that the parties are no longer seeking a divorce. That is sufficient to invoke *Watson*.

Respondent also argues that the *Watson* rule is futile since a party to a dissolution suit may be sued in a separate action for attorney fees under section 508(e) of the Act, and the parties may remain "embroiled in litigation" if that party, in turn, sues her spouse for contribution. The argument is speculative. Although an attorney may sue his client for attorney fees, it does not follow that the *married couple* will litigate the issue, and it does not keep the parties in divorce court, where they have decided they no longer want to be.

Respondent argues that the *Watson* rule should be overruled because it encourages the "unrestrained use of voluntary dismissals by plaintiffs." Respondent argues that petitioner voluntarily dismissed the suit six days before trial to avoid an adverse outcome at trial. Again, the argument is speculative and irrelevant. There is no evidence in the record pointing to a reason for the voluntary dismissal, nor is the movant required to give one. Nor does the record contain evidence that there exists a widespread practice of improperly motivated voluntary dismissals creating a policy concern sufficient to outweigh the clear policy concerns discussed in *Watson* and *Erby*.

Affirmed.

GORDON, J., concurs.

JUSTICE LEAVITT, dissenting:

Both the trial court and the majority affirming here place reliance on *Watson v. Watson*, 335 Ill. App. 637, 82 N.E.2d 671 (1948). In *Watson* this court determined that jurisdiction was lacking to hear the fee issue and also that public policy precluded the court from addressing the matter following a voluntary dismissal of the dissolution action. *Watson*, 335 Ill. App. at 640-41. In *Watson* it was deemed public policy in favor of marriage forbade continuing hostile litigation when both parties sought to have a divorce suit dismissed. *Watson*, 335 Ill. App. at 641; see also *Anderson v. Steger*, 173 Ill. 112, 119-20, 50 N.E. 665 (1898); *McCulloch v. Murphy*, 45 Ill. 256 (1867). The majority recognizes that with the adoption of the Illinois Constitution of 1970 and the enactment of section 508 of Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/508 (West 1996)) a jurisdictional bar to fee petitions in cases such as this is no longer an issue. Simply stated then the issue before us is whether the trial court should, based on the public policy argument advanced in *Watson*, decline to exercise its jurisdiction to hear a fee petition after voluntary dismissal of the dissolution action. While the majority of this court now answers the question in the affirmative, I would hold otherwise.

Not only have the jurisdictional barriers that once existed vanished, but legislative changes reflected in the Dissolution Act, as well as subsequent decisions of our supreme court, have also, in my opinion, largely undermined the public policy concern voiced in older cases such as *Watson*. Notably, the Dissolution Act, unlike the statutory scheme that preceded it, expressly permits attorneys representing parties in dissolution proceedings to seek fees from their clients while the dissolution proceedings are still ongoing. See 750 ILCS 5/508(a) (West 1996); *Nottage v. Jeka*, 172 Ill. 2d 386, 394, 667 N.E.2d 91 (1996).

Moreover, in seeking fees from a client, an attorney is not limited to the remedies provided under the Dissolution Act, as our supreme court has recently made clear. In *Nottage*, the supreme court found this court erred in its conclusion that section 508 of the Dissolution Act was the sole means by which an attorney could recover a fee. *Nottage*, 172 Ill. 2d at 392. It was determined that the present legislative scheme was not designed to exclude bringing a common law contract action for damages. The statutory remedy was in addition to, not exclusive of, any common law right. *Nottage*, 172 Ill. 2d at 398.

Since the jurisdictional bar to a fee petition in cases such as this is long gone and an attorney may now sue his client for fees either during or subsequent to dissolution proceedings, it would seem to me the state's public policy has shifted away from avoiding—or not recognizing—fee disputes between spouses toward one that guarantees not

only a fair process but also a complete and final disposition of the matter, including the payment of fees. This countervailing policy is well recognized and equally as long standing as the one reiterated in *Watson*. See generally Annotation, *Right of Attorney to Continue Divorce or Separation Suit against Wishes of His Client*, 92 A.L.R.2d 1009, 1017-20 (1963). In *Morrison v. Morrison*, 122 N.J. Eq. 233, 193 A. 908 (N.J. Ch. 1937), it was well stated, albeit in somewhat outdated fashion:

> "In matrimonial cases we regard the wife as the favored suitor, and call upon the husband to pay her suit moneys; otherwise, in many cases the wife would be powerless to assert her legal rights against him. We encourage reputable counsel to represent wives in meritorious cases, upon the implied assurance that they will be compensated for the reasonable value of their services through orders against the husbands. We also applaud and encourage their efforts, as officers of the court, to effect reconciliations where possible. Unless all this is mere platitude, how can we penalize them for doing what we preach to them is their duty? If we do so, how can we expect counsel to be willing to undertake a destitute wife's case against her husband, no matter how meritorious? Public policy requires that lack of means shall not deprive the wife of the services of a competent solicitor, and it follows that it is contrary to public policy to deny reasonable compensation to such solicitor in proper cases to be paid by the husband \*\*\*." *Morrison*, 122 N.J. Eq. at 236, 193 A. at 909-10.

See, *e.g., Frederick v. Frederick*, 25 P.2d 733, 734-35 (Colo. 1933). Of course, we recognize that in today's world neither party to a dissolution action is favored and that either spouse may enjoy the benefit of the present statutory scheme.

This same policy pervades the new "Leveling the Playing Field" amendments to our Dissolution Act. Under section 501(c—1), a spouse now may receive an award of interim attorney fees while a dissolution case is pending. See 750 ILCS 5/501(c—1) (West 1996). The very purpose of such interim awards is "to achieve substantial parity in parties' access to funds for litigation costs." See 750 ILCS 5/102(5) (West 1996). Clearly, then, encouraging attorneys to take on representation of economically disadvantaged spouses, through the implied assurances that they can "cross the aisle," if need be, for their fees, is integral to achieving the primary goal of the current Dissolution Act—leveling the playing field in dissolution actions. Thus, an attorney who takes a case such as the present one with an understanding that fees may be sought from the other side should not now find that he cannot collect fees for his work from the party able to pay due to the voluntary dismissal by the petitioning party. On facts identical to those

here, the Supreme Court of Colorado refused to sanction similar conduct on the part of the husband:

> "Frederick [the husband], angry, humiliated his wife with open slanderous charges [by filing for divorce]. In sheer necessity she sought, as she rightly might, the services of counsel. The wife represented, her counsel understood, and the fact was that only from him who had precipitated the breach could compensation be had. The case was of the kind *** in which the husband is customarily required to remunerate counsel employed by his spouse. His conclusion to withdraw the charge against his wife, to be commended, of course, did not operate to discharge his full obligation. He, not his wife, not her counsel, initiated that which gave rise to the reasonable added burden of his folly. The court properly retained control of the case for the purpose appearing. In no manner whatever did such continued control interfere with the reconciliation of the parties." *Frederick*, 25 P.2d at 734-35.

The public policy supposedly advanced by the majority's decision is, moreover, entirely speculative on the record before us. There was no evidence before the trial court suggesting the parties to this case were actually in the process of reconciling; respondent flatly denies as much, and the fact that she continues to (or acquiesces in her attorneys' efforts to) press the fee contribution issue in an appeal to this court is suggestive of marital deterioration, not reconciliation. As respondent points out, this fact alone distinguishes this case from *Watson*, where reconciliation was undisputed. See *Watson*, 335 Ill. App. at 641 ("Public policy forbids that parties to a divorce suit should be kept in a state of hostile litigation *when both are seeking to have it dismissed*"). (Emphasis added.)

Regardless, even if it can be assumed petitioner voluntarily dismissed his petition in this case for the purpose of reconciling, it does not necessarily follow that permitting respondent to go forward with her fee petition here will hinder the reconciliation process. If the alleged reconciliation between these parties is "so insincere and impermanent as to be jeopardized by so trivial a cause [as a fee petition], it is at best unworthy of consideration, and it may well be a mere pretense on the husband's part, adopted as a means of evading his just obligation." See *Morrison*, 122 N.J. Eq. at 235-36, 193 A. at 909. Further, I concur with respondent's argument that dismissing the fee petition in the domestic relations division does little to assure the parties are free from the continuing hostility of litigation, if the result is that litigation continues—in the form of a common law contract action between respondent and her counsel—to be heard in another corridor of the same courthouse.

For these reasons, I respectfully dissent.