(No. 85204.

*In re* APPLICATION OF THE COUNTY COLLEC-TOR OF DU PAGE COUNTY FOR JUDGMENT FOR TAXES FOR THE YEAR 1993 (County Collector of Du Page County, Appellee, v. ATI Carriage House, Inc., *et al.*, Appellants).

*Opinion filed June 17, 1999.—Rehearing denied October 4, 1999.*

RATHJE, J., took no part.

HEIPLE, J., joined by HARRISON, J., dissenting.

James A. Geraghty, of Lisle, and Paul J. Bargiel, of Chicago, for appellants.

Joseph E. Birkett, State's Attorney, of Wheaton (Margaret M. Healy and Anna B. Harkins, Assistant State's Attorneys, of counsel), for appellee.

John M. Izzo, of Scariano, Kula, Ellch & Himes, Chtd., of Chicago Heights, for *amici curiae* Du Page County School District 11 *et al.*

Everett E. Nicholas, Jr., and Heidi A. Katz, of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for *amici curiae* Illinois Association of School Boards *et al.*

JUSTICE MILLER delivered the opinion of the court:

A group of taxpayers filed objections in the circuit court of Du Page County to the application of the Du Page County collector for judgment on their 1993 real estate taxes, which the objectors had paid under protest. Of relevance here, the objectors contended that one category of tax levy was void because it violated section 17—1 of the School Code (105 ILCS 5/17—1 (West 1996)). The Du Page County collector moved to dismiss this objection, and the trial judge granted the collector's motion. The objectors appealed, and the appellate court, with one justice dissenting, affirmed the dismissal order. 294 Ill. App. 3d 868. We allowed the objectors' petition for leave to appeal (177 Ill. 2d R. 315(a)), and we now affirm the judgment of the appellate court.

The facts underlying the present controversy are not in dispute. On November 21, 1994, a number of taxpayers filed objections in the circuit court of Du Page County under section 194 of the Revenue Act of 1939 (Ill. Rev. Stat. 1991, ch. 120, par. 675 (now codified at 35 ILCS 200/23—5 *et seq.* (West 1996)) to the application of the Du Page County collector for judgment on their 1993 real estate taxes. The objectors had paid those taxes under protest. The taxpayers raised a variety of objections to levies imposed by a number of different local taxing bodies; the present appeal involves only one objection pertaining to levies made by certain school districts.

The taxpayers later designated Centerpoint Properties Corporation as the lead objector. The parties agreed that Itasca School District No. 10 would serve as a test case, and that all similarly situated school districts would be bound by the resolution of the Itasca case. The parties submitted a stipulation of facts to the trial court regarding the Itasca school levy at issue here. According to the stipulation, Itasca School District No. 10 operates on a fiscal year that runs from July 1 through June 30. The district adopted its budget for fiscal year 1993-94 on May

12, 1993. The district adopted a tax levy on December 15, 1993. At the time it made this levy, the district had cash and assets on hand to meet its estimated expenditures through June 30, 1994, without using any tax revenue generated by the levy, and it reasonably anticipated that no proceeds from the levy would be used until the beginning of the 1994-95 fiscal year, on July 1, 1994. The district adopted its budget for fiscal year 1994-95 on May 11, 1994. Because the Itasca district would not be using funds raised from a levy until the next fiscal year, the district was operating under what the parties term a cash-basis method of financing. See *People ex rel. Manifold v. Wabash R.R. Co.*, 389 Ill. 403, 407 (1945). A district operating on a deficit basis, in contrast, does not have sufficient reserves on hand and uses the levy from the current year to help meet its expenses.

The objectors argued that the district's 1993 tax levy violated section 17—1 of the School Code and was therefore void. Section 17—1 provides, "If the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made, then such annual budget shall be adopted prior to the time such tax levy shall be made." 105 ILCS 5/17—1 (West 1996). The objectors contended that the levy adopted by the district in December 1993 was "for" fiscal year 1994-95 because the proceeds from the levy would not be used until then. The objectors theorized that because, in the language of section 17—1, the "beginning of the [1994-95] fiscal year *** was subsequent to the time that the levy for such fiscal year was made," the statute required the Itasca district to adopt an annual budget for fiscal year 1994-95 before it could make a levy that would be used at that time. In essence, the objectors believe that section 17—1 requires cash-basis districts to formulate their budgets for the next fiscal year before they make levies whose proceeds will be used in that fiscal year.

The collector moved to dismiss this objection pursuant to section 2—615(a) of the Code of Civil Procedure (735 ILCS 5/2—615(a) (West 1996)). The collector argued that the levy made in December 1993 was "for" fiscal year 1993-94 because that was when it was made, and that the provision cited by the objectors was not violated because the school board had formulated its budget for fiscal year 1993-94 before it made the December 1993 levy. Following a hearing, the trial judge granted the collector's motion, agreeing with the collector that District 10 had not violated section 17—1. The judge also made a finding under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) to permit an immediate appeal from the ruling, and the objectors appealed.

The appellate court, with one justice dissenting, affirmed the dismissal of the objection. The court concluded that a tax levy filed by a cash-basis school district before the December deadline is a tax levy for the fiscal year in which it is filed, regardless of when the school district intends to spend the money resulting from the levy. 294 Ill. App. 3d at 874. The court therefore concluded that section 17—1 did not require the Itasca district to draft a budget for a subsequent fiscal year before making a tax levy that would produce revenue that would be used in the later fiscal year. The dissenting justice disagreed, believing that section 17—1 did require the district to formulate a budget before making a levy. 294 Ill. App. 3d at 875 (McLaren, J., dissenting). We allowed the objectors' petition for leave to appeal. 177 Ill. 2d R. 315(a). The Illinois Association of School Boards and the Illinois Association of School Administrators were granted leave to submit a joint brief as *amici curiae* in support of the collector, as were a number of school districts located in Du Page, Will, and Kane counties. 155 Ill. 2d R. 345.

Section 17—1 of the School Code prescribes budgeting procedures for school districts with fewer than

500,000 inhabitants. Section 17—1 provides, in pertinent part:

> "The board of education of each school district under 500,000 inhabitants shall, within or before the first quarter of each fiscal year, adopt an annual budget which it deems necessary to defray all necessary expenses and liabilities of the district, and in such annual budget shall specify the objects and purposes of each item and amount needed for each object or purpose.
>
> \*\*\*
>
> The board of education of each district shall fix a fiscal year therefor. If the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made, then such annual budget shall be adopted prior to the time such tax levy shall be made." 105 ILCS 5/17—1 (West 1996).

The controversy in the present case centers on the phrase "for such fiscal year" in the provision in section 17—1 that begins, "If the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made, \*\*\*." The objectors contend that the plain language of the statute requires a district to adopt a budget for a fiscal year before it makes a levy that will produce funds to be used during that fiscal year. The objectors point out, in support of their construction, that the preposition "for" may be defined as meaning "as a preparation toward," "in view of," or "having as goal or object." Webster's Third New International Dictionary 886 (1986). According to the objectors, the phrase "for such fiscal year" simply means, in the case of a cash-basis entity like District 10, the next fiscal year. In response, the collector asserts that the provision at issue is ambiguous and that it may also mean the fiscal year in which the levy is made. In support of the collector's interpretation, *amici* Illinois Association of School Boards and Illinois Association of School Administrators note that "for" has meanings besides those cited by the objectors, and that it may also mean "on account

of," "as regards," "in respect to," or "concerning." Webster's Third New International Dictionary 886 (1986). In ascribing different meanings to the disputed provision, the objectors focus on when the proceeds of the levy will be used, while the collector focuses on when the levy is made.

As the appellate court observed, the objectors bear the burden of establishing the invalidity of the levy, for we will presume that the taxes were legally levied. *People ex rel. Redfern v. Penn Central Co.*, 47 Ill. 2d 412, 418 (1971). The fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996); *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 146 Ill. 2d 175, 207 (1991). We believe that the challenged provision may reasonably be interpreted in more than one way and therefore is ambiguous. See *Advincula v. United Blood Services*, 176 Ill. 2d 1, 18 (1996); *People v. Jameson*, 162 Ill. 2d 282, 288 (1994). The variety of different senses in which "for" is used suggests that the phrase "for such fiscal year" might refer either to the fiscal year in which the proceeds of the levy will be spent, as the objectors argue, or to the fiscal year in which the levy is made, as the collector contends.

When a statute is ambiguous, it will be given a construction that is reasonable and that will not produce absurd, unjust, or unreasonable results, which the legislature could not have intended. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). It is appropriate here, then, that we consider which interpretation better effectuates the legislative intent and is more consistent with the goals of the legislation of which this provision is a part. In the present case, we believe that the construction advanced by the collector is more consistent with other provisions

of the School Code and with other revenue-raising measures.

First, the provision at issue should be construed in a manner that is consistent with other, similar provisions. Notably, other tax-related provisions identify a tax levy by the year in which it is made, rather than by the year in which the proceeds from the levy are received or spent, as the objectors argue here. For example, section 9—175 of the Property Tax Code provides, "The owner of property on January 1 in any year shall be liable for the taxes of that year ***." 35 ILCS 200/9—175 (West 1996). The School Code formerly provided a later deadline for Du Page County school districts' tax levy certifications, identifying that date as "the last Tuesday in February of the calendar year following the year for which the tax levy is made." Ill. Rev. Stat. 1989, ch. 122, par. 17—11. Tax collection cases similarly identify the levy at issue by the year in which it is adopted, rather than the year in which it will generate revenue. *E.g.*, *In re Application of County Collector of Du Page County for Judgment for Delinquent Taxes for Year 1992*, 181 Ill. 2d 237 (1998). We note that the objectors themselves refer to the levy adopted by the district on December 15, 1993, as "the 1993 levy," and in their objections in the circuit court they alleged that they had "paid under protest taxes for the year 1993 ***."

Language elsewhere in section 17—1 suggests that a school district's budget will ordinarily be drafted around the time it is scheduled to take effect, rather than months in advance. Section 17—1 requires that a budget "contain a statement of the cash on hand at the beginning of the fiscal year, an estimate of the cash expected to be received during such fiscal year from all sources, an estimate of the expenditures for such fiscal year, and a statement of the estimated cash expected to be on hand at the end of such fiscal year." Under this provision, then, a budget is

to contain estimates of receipts and expenses for the year, and an estimate of the cash expected to be hand at the end of the year, but a statement, and not an estimate, of the cash on hand at the beginning of the year. This suggests that the budget will be drafted around the beginning of the fiscal year to which the budget applies, rather than months in advance of that time, when "a statement of the cash on hand at the beginning of the fiscal year" could not be made.

In addition, we note that the objectors' interpretation would require cash-basis school districts to budget far in advance of the time when those districts would ordinarily know about their income and expenses for that fiscal year. Here, the budget for the district's next fiscal year, beginning in July, was adopted two months earlier, during the preceding May. The objectors, however, would require districts to formulate their budgets long before the customary beginning of the fiscal year, given the December deadline for filing tax levies (105 ILCS 5/17—11 (West 1996) (school districts must file tax levies by last Tuesday in December)). Procedural requirements imposed by the Truth in Taxation Law (35 ILCS 200/18—55 through 18—95 (West 1996)) would effectively require cash-basis districts to formulate their budgets even in advance of the December tax-levy deadline.

We do not believe that long-range forecasting of the type that would become necessary under the objectors' interpretation is consistent with the policies or provisions of the school budgeting process. Much information regarding expected income and expenses cannot be known nine or more months in advance of the next fiscal year, as the objectors would require. For example, as noted by *amici* Illinois Association of School Boards and Illinois Association of School Administrators in their joint brief, a district's assessed valuation against which the district's next tax levy will be extended is not finally

determined until the following March or April, when county tax authorities will have completed their property tax assessment and review processes. The local equalization factor for the next fiscal year, computed by the Department of Revenue, is also unknown in the preceding summer. If the equalized assessed valuation is lower than expected, the county clerk's extension may not produce the full amount of the funds requested in the levy. The effects of the tax cap formula on districts located in counties that are subject to the Property Tax Extension Limitation Law (35 ILCS 200/18—185 through 18—245 (West 1996)) are also not known until the spring. The availability of other sources of revenue for the next fiscal year, such as various forms of state and federal aid, have generally not been determined as of the previous summer.

Uncertainty on the expense side of the ledger would also be inconsistent with a requirement that districts formulate their budgets nine or more months in advance of a fiscal year. Fluctuations in enrollments, increases in staffing costs resulting from subsequent contract negotiations, and other variables could undermine the utility of budgets drafted for years in advance of their operation. To be sure, section 17—1 permits districts to amend their budgets. To do so, however, a district would once again be required to satisfy the notice and hearing requirements that govern the budget-making process. In addition, a district making a late amendment to its budget would not be able to adjust the amount of its levy, for the December deadline for certifying the levy could have passed by that time.

Thus, rather than advancing the objectors' professed goal of making accurate and timely budget figures available to taxpayers, the objectors' construction of the statute could actually produce the opposite result: their interpretation would require school districts to formulate

budgets far in advance of the time when they could reasonably have available to them accurate and reliable information about their possible income and expenditures.

Finally, *amici* school districts note, in their joint brief before this court, that the State Board of Education, responsible for carrying out a number of functions and duties under the School Code, has never interpreted the provision at issue in the manner suggested by the objectors. Deference is ordinarily paid to interpretations of ambiguous statutory language by administrative agencies charged with their administration. *Santiago v. Kusper*, 133 Ill. 2d 318, 328 (1990); *Airey v. Department of Revenue*, 116 Ill. 2d 528, 536 (1987).

*People ex rel. Stanfield v. Pennsylvania R.R. Co.*, 3 Ill. 2d 524 (1954), cited by the objectors, is not to the contrary. That case involved the 1952 levy for a school district in Edgar County. The district operated on a fiscal year that began on July 1. The district adopted its budget for fiscal year 1952-53 on August 26, 1952, and at the same time adopted a levy. The objector contended that the levy was excessive, because the sum of the levy and the amount of nontax revenue the district anticipated receiving exceeded the amount of the budget. The court noted that because the levy adopted in 1951 did not produce sufficient sums for fiscal year 1952-53, the district had issued $50,000 in tax anticipation warrants against the 1952 levy.

The *Stanfield* court held that the district could impose a levy that would produce more revenue than the current budget required. The court began its analysis by considering whether the existence of a budget was a condition precedent to a valid tax levy, and concluded that a budget was not a condition precedent. The court distinguished school districts from other taxing bodies that are required to have an appropriation ordinance in force before levying taxes. The court explained:

"As regards school districts, however, this court has said that in only one instance is it necessary that the budget and appropriation ordinance be in force at the time of making the levy, namely, when the beginning of the fiscal year is subsequent to the time of the tax levy for that year. [Citations.] Since the fiscal year of the district herein considered began on July 1, 1952, and the levy was not made until later, August 26, 1952, it was not necessary that the budget be in force at the time of making the levy." *Stanfield*, 3 Ill. 2d at 526.

The objectors interpret *Stanfield* as enunciating the principle that a school district operating on a cash basis must always formulate its budget for a fiscal year before it makes a levy whose proceeds will be used during that fiscal year. We disagree. The court in *Stanfield* did not use the term "cash basis" in explaining its result or in setting out the exception quoted above, and the decision did not purport to formulate a rule applicable to cash-basis districts. The court merely recited the exception found in section 17—1.

For the reasons expressed above, we believe that the collector's interpretation of the challenged provision of section 17—1 better effectuates the underlying purposes of the legislation. The objectors would derive from the disputed provision a rule applicable to cash-basis districts, yet section 17—1 does not distinguish between cash-basis and deficit-basis districts for budget-making purposes. We believe that the legislature, if it had intended to impose the special requirement urged by the objectors, would have done so explicitly. Moreover, the collector's interpretation of the provision does not render the challenged provision meaningless, as the objectors contend it does. The provision would apply to a financially distressed school district that has borrowed against its current tax revenue and finds it necessary to adopt, prior to the start of the next fiscal year, the levy that it would normally adopt during the next fiscal year. In that way, the district could issue tax anticipation warrants against the new

levy to pay expenses arising in the next fiscal year. The collector points out that the exceptional requirement of section 17—1, that a district draft its budget for the next fiscal year before making a levy that would be for that fiscal year, would ensure that the receipts are reported before the funds are spent.

As a final matter, the objectors note that the legislature did not continue a saving clause found in the statutory predecessor to section 17—1, when the original provision was removed from the Municipal Budget Law and placed in the School Code. As the collector has observed, however, the legislature, in enacting section 17—1 without a saving clause, could have simply concluded that there was no need to include a provision like that, in light of the ordinary absence of any linkage between a school district's budget and its levy.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HEIPLE, dissenting:

In today's opinion, a majority of this court concludes that Itasca School District No. 10 did not violate section 17—1 of the School Code (105 ILCS 5/17—1 (West 1996)) by adopting its December 15, 1993, tax levy before adopting its budget for the 1994-95 fiscal year. Because the majority's holding cannot be reconciled with the plain language of the statute, I respectfully dissent.

The facts of this case are not in dispute. The Itasca school district operates on a fiscal year that runs from July 1 through June 30. The district adopted a tax levy on December 15, 1993. At the time it made this levy, the district had cash and assets on hand to meet its estimated expenditures through June 30, 1994, and it reasonably

anticipated that no proceeds from the levy would be used until the 1994-95 fiscal year, beginning on July 1, 1994. The district adopted its budget for fiscal year 1994-95 on May 11, 1994.

Several taxpayers filed objections to their 1993 real estate taxes, arguing that the district's December 15, 1993, tax levy was invalid because it was adopted in violation of section 17—1 of the School Code (105 ILCS 5/17—1 (West 1996)). That statute provides, in relevant part:

> "If the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made, then such annual budget shall be adopted prior to the time such tax levy shall be made." 105 ILCS 5/17—1 (West 1996).

As the majority correctly points out, the controversy in the present case centers on the meaning of the phrase "for such fiscal year" in section 17—1. More precisely, the relevant question is: "What year is a tax levy 'for?' " The taxpayers insist that, within the meaning of the statute, a tax levy is "for" the fiscal year in which the proceeds of that levy will be used. In contrast, the Du Page County collector argues that a tax levy may also be considered "for" the fiscal year in which it is made.

After examining various dictionary definitions of the word "for," the majority concludes that both the taxpayers' and the collector's interpretations of the statute are reasonable, and that the statute is ambiguous. Accordingly, the majority undertakes to determine which of the competing interpretations of the statute "is more consistent with the goals of the legislation." 187 Ill. 2d at 332. Finding that the taxpayers' interpretation of the statute would cause practical difficulties and administrative hassles for school districts, the majority adopts the collector's interpretation and holds that a tax levy should be considered "for" the fiscal year in which it is made.

The majority's error is rooted in its uncritical accep-

tance of the collector's characterization of the statute as ambiguous. This is a crucial point, because whatever the merits of the arguments concerning the district's administrative difficulties, such factors are irrelevant unless the statute, as written, is truly ambiguous. If application of an unambiguous statute would confound orderly school district budgeting procedures, then the remedy lies with the legislature—not with this court. As this court has repeatedly held:

> "Where an enactment is clear and unambiguous, the court is not free to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express [citations], nor is it necessary for the court to search for any subtle or not readily apparent intention of the legislature." *People v. Woodard,* 175 Ill. 2d 435, 443 (1997).

By its plain terms, section 17—1 applies only "[i]f the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made." 105 ILCS 5/17—1 (West 1996). If, as the majority holds, a tax levy could be considered "for" the fiscal year in which it is made, regardless of when the proceeds were used, then the beginning of the fiscal year would *never* be subsequent to the time of the tax levy "for" that year, and the statute would be rendered a nullity.

The majority's answer to this paradox is unconvincing. According to the majority, section 17—1 would still apply to a financially distressed school district that found it necessary to adopt a tax levy prior to the start of the next fiscal year in order to issue tax anticipation warrants against that levy. In conducting this analysis, however, the majority seems to assume that such a levy would be "for" the upcoming fiscal year. If that is true, then it can only be because the levy is not actually "for" the fiscal year in which it is made, but rather is "for" the fiscal year in which the proceeds therefrom will be used. However, this is precisely the opposite of the majority's holding.

Because section 17—1 is amenable to only one interpretation, this court is bound to apply the statute as written. Under the facts of this case, the beginning of the 1994-95 fiscal year (July 1, 1994) was indeed subsequent to the time that the tax levy for that fiscal year was made (December 15, 1993). Consequently, section 17—1 required the district to adopt its annual budget for the 1994-95 fiscal year *prior* to December 15, 1993. Here, however, the district did not adopt its annual budget for 1994-95 until May 11, 1994. Accordingly, the district's December 15, 1993, tax levy was adopted in violation of section 17—1 and was therefore invalid. Because the majority holds otherwise, I dissent.

JUSTICE HARRISON joins in this dissent.