No. 2--08--0927     Filed: 11-17-09

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| <u>In re</u> APPLICATION OF THE COUNTY COLLECTOR OF DU PAGE COUNTY FOR JUDGMENT FOR TAXES FOR THE YEAR 1999 | ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| (First American Bank Corporation <u>et al.</u>, Objectors- Appellants, v. Gwen Henry, Successor to John Lotus Novak, Du Page County Treasurer and <u>ex officio</u> Du Page County Collector, Applicant-Appellee; The Forest Preserve District of Du Page County, Intervenor-Appellee). | ) ) ) ) ) ) ) ) | No. 00--T--1

Honorable Thomas C. Dudgeon, Judge, Presiding. |

---

JUSTICE SCHOSTOK delivered the opinion of the court:

First American Bank and other taxpayers (collectively, the taxpayers) filed objections to 1999 taxes collected by the Du Page County collector on behalf of the Forest Preserve District of Du Page County (the district), specifically for the district's levy for its annual contribution to the Illinois Municipal Retirement Fund (the Fund). The taxpayers argued that the district had no authority to levy taxes in 1999 to pay for the district's fiscal year 2000 contribution to the Fund, because it had not yet passed any appropriation for that contribution. The trial court granted summary judgment in favor of the district, and the taxpayers appealed. We affirm.

The following facts are undisputed. On November 16, 1999, the district passed an ordinance levying $981,511 for the purpose of making its required contribution to the Fund for the next fiscal year, which was to begin on July 1, 2000, and run through June 30, 2001 (FY 2000). At the time,

the district had not appropriated any expenditures for its contribution to the Fund. On June 20, 2000, the district passed its annual appropriation ordinance for "all necessary expenses *** to be paid or incurred during" FY 2000. The ordinance included a $1,102,628 appropriation for the contribution to the Fund. The appropriation ordinance referred to the November 16, 1999, levying ordinance.

In 2000, the taxpayers received 1999 tax bills, which they paid. On November 15, 2000, they filed objections to, among other things, the taxes levied for the district's FY 2000 contribution to the Fund. The objection relevant to this case asserted that the district's authority to levy taxes for its contribution to the Fund derived solely from section 7--171 of the Illinois Pension Code (Pension Code) (40 ILCS 5/7--171 (West 1998)), and that this statute requires a municipal body such as the district to make the appropriation for the contribution prior to levying taxes for that contribution. The taxpayers asserted that, as the appropriation for the FY 2000 contribution was not made until June 20, 2000, the district was without authority to levy taxes in November 1999 for that contribution. The taxpayers sought the return of that portion of their taxes which was attributable to the district's November 1999 levy.

In July 2008, the district was granted leave to intervene in the tax objection case. It reached an agreement with the taxpayers, many of whom had also filed objections to subsequent years' taxes based on the same argument, that the decision in this case would be binding on the parties with respect to all outstanding tax objection cases for the tax years 1999 through 2006. The district then filed a motion for summary judgment, arguing that it acted within its levying authority under section 7--171 of the Pension Code and sections 13.1 and 13.3 of the Illinois Downstate Forest Preserve District Act (Forest Preserve Act) (70 ILCS 805/13.1, 13.3 (West 1998)). The trial court ruled in favor of the district, and the taxpayers filed a timely notice of appeal.

Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2--1005(e) (West 2006); American Family Mutual Insurance Co. v. Jeris, 376 Ill. App. 3d 1070, 1073 (2007). Where, as here, the grant of summary judgment is based on an issue of statutory construction, we review the judgment de novo. Lee v. John Deere Insurance Co., 208 Ill. 2d 38, 43 (2003). "In interpreting a statute, a court's primary goal is to ascertain the intent of the legislature." Land v. Board of Education, 202 Ill. 2d 414, 421 (2002). The best evidence of the legislature's intent is the language of the statute itself, which must be given its plain and ordinary meaning. Land, 202 Ill. 2d at 421. Where that language is clear and unambiguous a court must apply the statute without resort to further aids of statutory construction. Land, 202 Ill. 2d at 422. Finally, in tax objection cases, "the objectors bear the burden of establishing the invalidity of the levy, for we will presume that the taxes were legally levied." In re Application of the County Collector of Du Page County for Judgment for Taxes for the Year 1993, 187 Ill. 2d 326, 332 (1999) (hereinafter ATI Carrier House).

The parties' arguments focus on the interaction between two statutes. The first relevant statute is section 7--171 of the Pension Code, which relates to the power of municipal bodies to levy taxes for the contributions to the Fund. Subsection (a) of section 7--171 requires all municipalities other than school districts to "appropriate an amount sufficient to provide for the current municipality contributions required by Section 7--172 of this Article, for the fiscal year for which the appropriation is made and all amounts due for municipal contributions for previous years." 40 ILCS 5/7--171(a) (West 1998). Subsection (b)(1) provides that, in order to obtain monies for its contributions to the Fund, "[a] municipality other than a school district may levy a tax which shall

not exceed the amount appropriated for municipality contributions." 40 ILCS 5/7--171(b)(1) (West 1998). Subsection (e) states, among other things, that "[s]uch tax shall be levied and collected in like manner, with the general taxes of the municipality." 40 ILCS 5/7--171(e) (West 1998).

Sections 13.1 and 13.3 of the Forest Preserve Act, which were first enacted in 1988, set out a downstate forest preserve district's power to levy taxes and appropriate monies for its various expenses, and the procedures it must follow in doing so. Section 13.1 provides that, between the first Monday in October and the first Monday in December each year, a forest preserve district must adopt an ordinance levying its general taxes for the next fiscal year. However, "[a]ll such taxes and rates are *** exclusive of taxes levied for employees' annuity and benefit purposes." 70 ILCS 805/13.1 (West 1998). Section 13.3 establishes that a forest preserve district must, "within or before" the first quarter of a district's fiscal year, pass an appropriation ordinance "appropriating such sums of money as may be required to defray all necessary expenses and liabilities of the district to be paid or incurred during the fiscal year." 70 ILCS 805/13.3(a) (West 1998). Finally, section 13.3(b) states that the failure of a board to adopt an appropriation ordinance or otherwise comply with section 13.3(a) "shall not affect the validity of any tax levy of the forest preserve district." 70 ILCS 805/13.3(b) (West 1998). In addition, "the annual appropriation ordinance for any fiscal year need not be intended or required to be in support of or in relation to any tax levy made during that fiscal year." 70 ILCS 805/13.3(b) (West 1998).

The taxpayers argue that the district's authority to levy taxes to pay for its contribution to the Fund derives from section 7--171 of the Pension Code, not from the Forest Preserve Act. In support, the taxpayers cite both to People ex rel. Krapf v. Hayes, 13 Ill. 2d 143, 153 (1958), and to the language of the statutes themselves. We cannot quarrel with this proposition, so far as it goes.

Indeed, the district concedes this point. Section 13.1 of the Forest Preserve Act, which grants a forest preserve district the power to levy general taxes, explicitly states that it does not apply to levies of taxes to fund employees' retirement benefits. 70 ILCS 805/13.1 (West 1998). Therefore, the authority to levy taxes for such retirement benefits must be derived from section 7--171, which indeed grants municipalities such as forest preserve districts such power. 40 ILCS 5/7--171(b)(1) (West 1998) (permitting municipalities other than school districts to levy taxes for their contributions to the Fund). In sum, we find it clear that the authority to levy taxes for contributions to the Fund is contained in section 7--171 of the Pension Code.

The taxpayers go on to argue that section 7--171 also governs the procedures for levying such taxes, and that it requires that a municipality pass an appropriation ordinance identifying the amount of its contribution to the Fund before it can levy a tax in that amount. In support, the taxpayers rely on the language of section 7--171(b)(1), which states that a municipality "may levy a tax which shall not exceed the amount appropriated for municipality contributions." 40 ILCS 5/7--171(b)(1) (West 1998). The taxpayers contend that this language, with its use of the past-tense form "appropriated," can only be read to require that a municipality must set the amount of its contribution through an appropriation before it can levy a tax for that amount.

We cannot accept this interpretation, because it reads into the statute timing requirements that simply are not there. While the use of the phrase "the amount appropriated" may certainly be interpreted to refer to the amount "already appropriated" or "previously appropriated" for a contribution to the Fund, it is equally possible to read it as meaning the amount "subsequently appropriated" or "eventually appropriated" for such a contribution. The mere use of the term "appropriated" does not signify a preference for either of these interpretations, and nothing about the

language quoted indicates that the legislature intended to impose a timing sequence mandating that a municipality adopt an appropriation ordinance before it adopts its levying ordinance. Rather than imposing a timing requirement, the plain language of this provision imposes a limit on the <u>amount</u> that may be levied: a municipality may not levy taxes that would exceed the amount appropriated for its contribution to the Fund. This restriction prevents a municipality from accumulating excess funds at the expense of the taxpayer. There is no hint of any other purpose intended by the legislature in enacting this provision. We may not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. <u>Van Milligen v. Department of Employment Security</u>, 373 Ill. App. 3d 532, 538 (2007).

The taxpayers assert that <u>People ex rel. Schlaeger v. Jarmuth</u>, 398 Ill. 66 (1947), supports their contention that the word "appropriated" in section 7--171(b)(1) must be interpreted as referring to an amount that had already been appropriated. In <u>Jarmuth</u>, 398 Ill. at 71, the Illinois Supreme Court stated:

"It is apparent that no tax can be levied by any city for any purpose unless the corporate authorities of such city first determine the amount required for such purpose and appropriate such amount to such purpose, and that after such amount has been so determined and appropriated, then the corporate authorities may levy a tax not to exceed the amount appropriated."

Although this quotation appears to support the taxpayers' position, the supreme court's holding in <u>Jarmuth</u> concerned the levying power granted under a specific statute that is different than the statute at issue here. The specific statute at issue in <u>Jarmuth</u> was section 16--1 of the 1945 Cities Code,

which contained language expressly establishing a time sequence and requiring municipalities to appropriate before they levy, as follows:

"[By various dates, depending on the size of the municipality,] the corporate authorities shall ascertain the total amount of appropriations legally made for all corporate purposes to be provided for by the tax levy of that year. Then, by an ordinance specifying in detail the purposes for which the appropriations have been made and the amount appropriated for each purpose respectively, the corporate authorities shall levy not to exceed the total amount so ascertained ***." (Emphasis added.) Ill. Rev. Stat. 1945, ch. 24, par. 16--1.

In that particular statute, it is clear that "the amount appropriated" could refer only to amounts already appropriated, and not to amounts to be appropriated in the future. Unfortunately for the taxpayers, as we have discussed, the language of section 7--171(b)(1) of the Pension Code does not place the phrase "the amount appropriated" in a context of similar language establishing a time sequence.

The taxpayers also contend that the language of section 7--171(a) of the Pension Code supports their interpretation of the statute. Specifically, subsection (a) requires municipalities to appropriate an amount for a contribution to the Fund each year that is sufficient "for the fiscal year for which the appropriation is made and all amounts due for previous years," and that is based on an estimate of the assets available for this purpose, "including funds available from levies for this purpose in prior years." 40 ILCS 5/7--171(a) (West 1998). The taxpayers argue that these provisions impose a timing requirement that the district appropriate before levying, but they do not explain why that should be. A straightforward reading of subsection (a) shows that it requires that the district

take both shortfalls and excess funds from previous years' levies and contributions into account in arriving at the appropriation for the current fiscal year. Just as with subsection (b)(1), the purpose of subsection (a) appears to be ensuring that a municipality meets its obligations to the Fund in full but does not accumulate excess funds at the expense of the taxpayer. We can see no reason why complying with this provision would require the district to pass its appropriations ordinance before passing its levying ordinance, and again, we will not read into a statute limitations not expressed by the legislature. Van Milligen, 373 Ill. App. 3d at 538.

At its heart, the argument that the taxpayers are trying to raise in this appeal is that there is something fundamentally wrong with allowing a municipal body to tax citizens before it has shown them exactly what it plans to do with the money. As the taxpayers cogently argue, it is the passage of appropriations ordinances, with their attendant notice requirements and publicity, that present the greatest opportunity for public input. The passage of the levy itself rarely garners such public comment. When a municipal body passes the levy before it passes its budget or appropriations, it diminishes the likelihood that its finances will be subject to public scrutiny and input. The taxpayers assert that limiting public input into the budgeting process in this way is, essentially, contrary to public policy.

Unfortunately for the taxpayers, the supreme court has consistently rejected this position. In People ex rel. Rockwell v. Chicago, Burlington & Quincy R.R. Co., 386 Ill. 114 (1944), taxpayers objected to the Kane County general tax levy on the ground, among other things, that the levy preceded the adoption of the budget. Although the previous version of the Counties Code required the adoption of a budget prior to the levy, amendments to the statute removed that requirement. The taxpayers argued that it was nevertheless essential that the budget be passed first, and because the

levy preceded the passage of the budget, the levy was void. The supreme court rejected the argument that some higher law required budget ordinances to precede levying ordinances, stating that "[t]he power to determine when a budget ordinance shall be passed, and the order of passage as between levy and budget ordinances, rests exclusively with the General Assembly." Rockwell, 386 Ill. at 117.

Fifty years later, in ATI Carriage House, 187 Ill. 2d at 334, the supreme court confirmed this principle. The facts surrounding the tax levy at issue in ATI Carriage House are quite similar to those presented here: the municipality (there, a school district) passed a levy in one fiscal year (during December 1993), intending to use the funds raised through the levy to pay for its expenses during the following fiscal year (1994-95), which was to begin on July 1 of the upcoming year. The municipality already had on hand sufficient funds to pay for its expenses for the current fiscal year. The municipality did not pass a budget for the upcoming fiscal year (1994-95) until shortly before that fiscal year was to start. Thus, just as in our case, the municipality levied in advance of adopting its financial plan (there, a budget). The supreme court referred to this practice in nonpejorative terms, as "a cash-basis method of financing." ATI Carriage House, 187 Ill. 2d at 329.

The taxpayer-objectors claimed that the levy violated section 17--1 of the Illinois School Code (105 ILCS 5/17--1 (West 1996)), which provided that "If the beginning of the fiscal year of a district is subsequent to the time that the tax levy for such fiscal year shall be made, then such annual budget shall be adopted prior to the time such tax levy shall be made." On its face, this language appears to express a straightforward ban on the school district's cash-basis financing procedures and require that the budget for a given fiscal year must be adopted before the levy for that fiscal year is filed. However, the supreme court found the phrase "for such fiscal year" to be ambiguous, capable of referring either to the upcoming fiscal year when the money from the levy

would be used, or to the current fiscal year, when the levy was filed. The supreme court then considered other aids to statutory construction, including the observation that tax levies and tax-collection cases typically refer to a levy using the calendar year in which it was filed, rather than the fiscal year in which it will be collected or expended. ATI Carriage House, 187 Ill. 2d at 333. Finally, the supreme court was also sympathetic to the burden that would be imposed upon cash-basis school districts if they were required to formulate their budgets for upcoming fiscal years months in advance, when many of their expenditures would be difficult to estimate. ATI Carriage House, 187 Ill. 2d at 334-35. The court determined that the various provisions of the School Code did not reveal any legislative antipathy to cash-basis financing, and concluded that the ambiguity found in section 17--1 permitted such financing. ATI Carriage House, 187 Ill. 2d at 337-38.

In evaluating whether the taxes at issue in both of these cases were properly levied, the supreme court consistently focused on the language of the statute in question, and only that, thus confirming that permitting a municipal body to levy before it appropriates offends no fundamental public policy interests. Rather, the only issue is whether the statute's language permits the municipal body to adopt this procedure.

We note that the statutory provision at issue in this case, section 7--171 of the Pension Code, itself contains a provision permitting a municipality to refer to other statutes in establishing procedures for the levying and collection of taxes for contributions to the Fund. Specifically, subsection (e) provides that such taxes "shall be levied and collected in like manner, with the general taxes of the municipality." 40 ILCS 5/7--171(e) (West 1998). In this case, the general taxes for the district are levied and collected pursuant to sections 13.1 and 13.3 of the Forest Preserve Act. Section 13.1 expressly permits a forest preserve district to levy taxes between the first Monday in

October and the first Monday in December for an upcoming fiscal year (70 ILCS 805/13.1 (West 1998)), while section 13.3 provides that a district need not adopt an appropriation ordinance until the first quarter of its fiscal year, and may even fail to adopt an appropriation ordinance at all without impairing the validity of its levy (70 ILCS 805/13.3 (West 1998)). It is undisputed that the district complied with these requirements in adopting its levying and appropriation ordinances for FY 2000. Thus, the trial court did not err in granting summary judgment in favor of the district with respect to this objection.

On appeal, the taxpayers raise one additional argument, asserting that if the Forest Preserve Act and the Pension Code are read to permit the district to levy taxes in advance of its appropriations, then sections 13.1 and 13.3 of the Forest Preserve Act confer on downstate forest preserve districts a benefit not available to any other municipal entity, thereby violating the Illinois Constitution, specifically the equal protection clause (Ill. Const. 1970, art. I, §2) and the prohibition against "special legislation" (Ill. Const. 1970, art. IV, §13). The taxpayers have forfeited this argument by failing to raise it adequately in the trial court. The sole mention of this argument before the trial court was a two-sentence footnote in the taxpayers' response to the motion for summary judgment. A reviewing court will not consider arguments not presented to the trial court. In re Application of the County Treasurer & ex officio County Collector, 373 Ill. App. 3d 679, 702 (2007), citing Jeanblanc v. Sweet, 260 Ill. App. 3d 249, 254 (1994). Arguments raised for the first time on appeal are deemed forfeited, even when the appeal is from an order granting summary judgment. Jeanblanc, 260 Ill. App. 3d at 254. However, we briefly note that the argument also lacks merit.

As a preliminary matter, the taxpayers have not established the factual premise for their argument: that the ability to levy before appropriating is possessed only by downstate forest preserve

districts. The district has identified at least two other categories of taxing bodies that also appear to have this power. In addition, statutes are presumed constitutional (In re R.C., 195 Ill. 2d 291, 296 (2001)), and the supreme court has upheld similar statutes permitting the levying of taxes prior to the setting of the relevant appropriations or budget without any suggestion that doing so would violate the Illinois Constitution (see, e.g., ATI Carriage House, 187 Ill. 2d at 334; Rockwell, 386 Ill. at 118). Accordingly, even if we were to consider this argument, we would find that the taxpayers have not met the considerable hurdles (see In re R.C., 195 Ill. 2d at 296-97) of demonstrating that sections 13.1 and 13.3 of the Forest Preserve Act are unconstitutional on their face.

The district has raised other arguments, but in light of our resolution of the above issue we need not address them. For all of the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

ZENOFF, P.J., and HUDSON, J., concur.