Docket No. 109711.

IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS

FIRST AMERICAN BANK CORPORATION *et al.*, Appellants, v.
GWEN HENRY, Du Page County Treasurer and *ex officio* Du Page
County Collector, Appellee (The Forest Preserve District of Du Page
County, Intervenor-Appellee).

*Opinion filed January 21, 2011.*

JUSTICE THEIS delivered the judgment of the court, with
opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

OPINION

The issue in this case is whether the Forest Preserve District of Du
Page County (the District) was required by section 7–171 of the
Illinois Pension Code (40 ILCS 5/7–171 (West 2008)) to enact an
appropriation ordinance for its contribution to the Illinois Municipal
Retirement Fund (IMRF) before it enacted a levy ordinance to raise
revenue that would, in part, cover this contribution. The circuit court
of Du Page County entered summary judgment in favor of the
District, and the appellate court affirmed. For the reasons that follow,
we also affirm.

## BACKGROUND

The IMRF was established by the Illinois General Assembly in 1939 and began operating in 1941 as a public pension program for five municipalities. Today, the fund administers $22.3 billion in assets for nearly 275,000 current and former employees of 2,950 local government entities across the state.[1] Each municipality pays its own employees' disability, retirement, and death benefits into its own account, pursuant to a contribution rate determined by independent actuaries based upon the employees' salaries, ages, and years of service. Every June, the Retirement Fund Board notifies each municipality of the preliminary contribution rate, and every November of the final contribution rate, for the following year.[2] Then each municipality must raise revenue to support its contribution.

In June 1999, the District received an "Advance IMRF Contribution Notice," and in November 1999, it received an "Official Notice of Illinois Municipal Retirement Fund Contribution Rate for Calendar Year 2000." On November 16, 1999, the District passed a levy ordinance, which included $981,511 for its contribution to the IMRF for the following year. On June 20, 2000, the District passed a appropriation ordinance, which included $1,102,628 for its contribution to the IMRF and referred to the November 16, 1999, levy ordinance.

On November 15, 2000, First American Bank Corporation and three other companies (the plaintiffs) filed a tax objection, contending that the District lacked authority to levy for its IMRF contribution before it appropriated for it because section 7–171(b)(1) of the Pension Code limits the tax to the "amount appropriated." See 40 ILCS 5/7–171(b)(1) (West 2008). In July 2008, the District was granted leave to intervene in the case, and the parties agreed that any final order in this case would govern the plaintiffs' tax objections for

---

[1] The IMRF does not cover employees of the City of Chicago or Cook County. See 40 ILCS 5/7–132(A)(a) (West 2008).

[2] IMRF employer rates are on a "two-year lag." See http://www.imrf.org/info/press_room/IMRF_101.htm. For example, information from 1998 was sent to actuaries in 1999, and they used that information to calculate contribution rates for 2000.

1999-2006. The District then filed a motion for summary judgment, arguing that it acted within its authority under section 7–171 and sections 13.1 and 13.3 of the Downstate Forest Preserve District Act. See 70 ILCS 805/13.1, 13.3 (West 2008). The trial court concluded that section 7–171(b)(1) sets a ceiling on, but not a timetable for, the IMRF levy, and entered summary judgment in favor of the District. The plaintiffs appealed.

The appellate court affirmed. 397 Ill. App. 3d 301. The appellate court agreed with the plaintiffs that section 7–171(b)(1) gives municipalities the authority to levy taxes for IMRF contributions. *Id.* at 304. The appellate court, however, disagreed with the plaintiffs that section 7–171(b)(1) requires municipalities to appropriate first and levy second. *Id.* at 305. Such an interpretation, stated the appellate court, goes beyond the statutory language:

> "While the use of the phrase 'the amount appropriated' may certainly be interpreted to refer to the amount 'already appropriated' or 'previously appropriated' for a contribution to the Fund, it is equally possible to read it as meaning the amount 'subsequently appropriated' or 'eventually appropriated' for such a contribution. The mere use of the term 'appropriated' does not signify a preference for either of these interpretations, and nothing about the language quoted indicates that the legislature intended to impose a timing sequence mandating that a municipality adopt an appropriation ordinance before it adopts its levying ordinance. Rather than imposing a timing requirement, the plain language of this provision imposes a limit on the *amount* that may be levied: a municipality may not levy taxes that would exceed the amount appropriated for its contribution to the Fund. This restriction prevents a municipality from accumulating excess funds at the expense of the taxpayer. There is no hint of any other purpose intended by the legislature in enacting this provision." (Emphasis in original.) *Id.* at 305.

The appellate court further stated that section 7–171(e) contains a provision permitting municipalities to refer to other statutes in establishing procedures for levying and collecting taxes for IMRF contributions. *Id.* at 308. Here, the general taxes for the District are levied and collected pursuant to sections 13.1 and 13.3 of the

Downstate Forest Preserve District Act. *Id.* at 308. Because the District complied with that statute, the trial court did not err in entering summary judgment in its favor. *Id.* at 309.

This court allowed the plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). Our standard of review is *de novo*. See *DesPain v. City of Collinsville*, 382 Ill. App. 3d 572, 577 (2008) (holding that statutory interpretation issues and summary judgment rulings are both reviewed *de novo*).

ANALYSIS

To resolve the issue in this case, we must construe section 7–171 of the Pension Code. The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent, and the plain language of the statute is the best indication of that intent. *Acme Markets, Inc. v. Callanan*, 236 Ill. 2d 29, 37-38 (2009). When the language is unambiguous, the statute must be applied as written. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). Additionally, the entire statute must be read as a whole, considering all relevant parts. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

Section 7–171 governs "finance" and "taxes" and provides:

"(a) Each municipality other than a school district shall appropriate an amount sufficient to provide for the current municipality contributions required by Section 7–172 of this Article, for the fiscal year for which the appropriation is made and all amounts due for municipal contributions for previous years. ***

(b) For the purpose of providing monies for municipality contributions, beginning for the year in which a municipality is included in this fund:

(1) A municipality other than a school district may levy a tax which shall not exceed the amount appropriated for municipal contributions.

* * *

(e) Such tax shall be levied and collected in like manner, with the general taxes of the municipality and shall be in addition to all other taxes which the municipality is now or

-4-

may hereafter be authorized to levy upon all taxable property therein ***." 40 ILCS 5/7–171 (West 2008).

In this appeal, the plaintiffs argue that the phrase "amount appropriated" in section 7–171(b)(1) unambiguously limits levies for IMRF contributions to past, not future, appropriations. The plaintiffs offer a short grammar lesson. Adding "-ed" to the root of a verb creates the simple past tense form of the verb. When the past tense form of a verb modifies a noun, the verb becomes a past participle, and use of the past participle connotes action in the past. The past tense of the verb "appropriate" is "appropriated." Accordingly, the plaintiffs contend, an "amount appropriated" is an amount appropriated in the past. The plaintiffs contend that the legislature used this phrase in section 7–171(b)(1) to set not only a quantitative limit on IMRF levies, but also a temporal one. That is, the plaintiffs assert that the legislature implicitly directed municipalities to appropriate first and levy second for their contributions to the fund.

We agree with the plaintiffs that section 7–171(b)(1), when read in isolation, seems to indicate that the appropriation must precede the levy. But we must consider section 7–171 in its entirety, and interpret section 7–171(b)(1) in its context. As the appellate court noted, section 7–171(e) states that IMRF taxes "shall be levied and collected in like manner, with the general taxes of the municipality." 40 ILCS 5/7–171(e) (West 2008). The general taxes of the District are levied and collected under the Downstate Forest Preserve District Act.

Section 13.1 of that statute governs forest preserve district tax levies and states:

> "After the first Monday in October and by the first Monday in December in each year, the board shall levy the general taxes for the District by general categories for the next fiscal year. ***
>
> ***
>
> All such taxes and rates are exclusive of the taxes required for the payment of the principal of and interest on bonds, and exclusive of taxes levied for employees' annuity and benefit purposes." 70 ILCS 805/13.1 (West 2008).

Section 13.3, titled "Fiscal year; appropriation ordinance," states:

> "§13.3. (a) The board of each forest preserve district

-5-

organized under this Act shall fix a fiscal year for the district. The board shall, within or before the first quarter of each fiscal year, adopt an annual appropriation ordinance appropriating such sums of money as may be required to defray all necessary expenses and liabilities of the District to be paid or incurred during the fiscal year.

(b) The failure of the board to adopt an annual appropriation ordinance or to otherwise comply with the provisions of this Section shall not affect the validity of any tax levy of the forest preserve district. The annual appropriation ordinance for any fiscal year need not be intended or required to be in support of or in relation to any tax levy made during that fiscal year." 70 ILCS 805/13.3 (West 2008).

Thus, for fiscal year beginning July 1, 2000, the District was required to pass a levy ordinance between early October and early December 1999, and an appropriation ordinance no later than September 30, 2000. The Downstate Forest Preserve District Act clearly allows the municipalities it governs to levy first and appropriate second. The plaintiffs concede this point in their reply brief: "[T]here is no doubt that for general purposes (i.e., excepting bond retirement and pension purposes) a downstate forest preserve district is mandated by sections 13.1 and 13.3 of the [Downstate Forest Preserve District Act] to levy before the start of the 'next fiscal year' and, much later, to appropriate for expenses of the next fiscal year." What the plaintiffs fail to grasp is that there is no exception. Though section 13.1 of the Downstate Forest Preserve Act provides that taxes under the Act do not include taxes for IMRF contributions, it simply recognizes the fact that "[t]he Illinois Municipal Retirement Fund Act [citation] is a complete statutory enactment to provide for annuities and benefits to municipal employees," and a municipality must look to that statute for authority to levy in support of its contribution to the fund. *People ex rel. Krapf v. Hayes*, 13 Ill. 2d 143, 152 (1958). Pursuant to section 7–171(e), municipalities must levy and collect taxes to support their IMRF contributions in the same way that they levy and collect their general taxes. Thus, the same statute–the Downstate Forest Preserve Act–controls the timing of both the District's IMRF levy and its general tax levy, and permits the levy to

precede an appropriation.

The plaintiffs attempt to explain away section 7–171(e) by arguing that "levied and collected in like manner, with the general taxes of the municipality" is a term of art which means, simply, collected. They quote and rely upon *People ex rel. Kelly v. Baltimore & Ohio R.R. Co.*, 376 Ill. 393 (1941). In *Kelly*, voters authorized a tax in support of a township library pursuant to section 10 of "the act relating to libraries" (see Ill. Rev. Stat. 1939, ch. 81, par. 10), and that tax was later extended without further action by the township's corporate authorities. In determining whether the tax could be extended, we noted that, prior to 1931, only voters, not the corporate authorities, could levy the tax. We stated:

> "When the decision in the case of *People v. Illinois Central Railroad Co.*[, 240 Ill. 426 (1909),] was made, the only provision of section 10 referring to the manner in which the tax should be levied was the provision that a majority of the voters at the 'annual election' in such town should vote in favor of the tax by rate, which rate was required to be specified in the notice of the election. It then provided further that upon such vote being cast the tax so authorized 'shall be levied and collected in like manner with other general taxes' of a town.

> We think the decision in *** *Illinois Central Railroad* *** was correct in holding that the vote in the election, *as the statute then read*, constituted the levy of the tax voted without any further act by the township. Under that decision, the phrase last above quoted should be read as though the word 'levied' was followed by a comma, and that the words 'in like manner with other general taxes' refer only to the collection and not to the levy of the tax." (Emphasis added.) *Kelly*, 376 Ill. at 395-96.

After 1931, when the statute was amended, the corporate authorities could levy this tax. *Kelly*, 376 Ill. at 396. "By the provisions of other statutes," the corporate authorities were "the electors" at the annual township meeting. *Kelly*, 376 Ill. at 396, citing Ill. Rev. Stat. 1939, ch. 139, par. 39. Thus, we concluded, the electors have a duty "to determine, annually, the amount needed for the current year and to levy the same *** in the same manner that taxes for other ***

purposes are levied." *Kelly*, 376 Ill. at 398.

This holding is consistent with our holding in *People ex rel. Schlaeger v. Jarmuth*, 398 Ill. 66 (1947). In *Jarmuth*, a taxpayer objected to a tax levied under section 11 of the act establishing the City of Chicago's Municipal Employees' Annuity and Benefit Fund (see Ill. Rev. Stat. 1941, ch. 24, par. 1054), arguing that that statute vested the power to tax in the fund's Retirement Board, and not the corporate authorities of the city. The statute provided that a tax to support the fund must be "levied and collected in like manner with the general taxes" of the city. In construing that language, we did not mention *Kelly*, but we held that taxes for the fund must be levied in "the manner in which the general taxes of the city are levied by the corporate authorities of the city." *Jarmuth*, 398 Ill. at 71. Consequently, we referred to another statute–section 16–1 of the Revised Cities and Villages Act–to determine how the city's general taxes were levied. *Jarmuth*, 398 Ill. at 71, quoting Ill. Rev. Stat. 1945, ch. 24, par. 16–1. Notably, section 16–1 stated that no tax could be levied unless an appropriation had been made. *Jarmuth*, 398 Ill. at 71.

Here, there is no corresponding limitation. Like the act establishing the city's annuity and benefit fund, section 7–171(e) instructs municipalities to levy and collect taxes to support their retirement fund contributions in the same manner in which they levy and collect their general taxes. But unlike section 16–1 of the Revised Cities and Villages Act, section 13.3 of the Downstate Forest Preserve District Act does not prohibit a levy without an appropriation. Instead, it states that the failure to adopt an appropriation ordinance does not invalidate any levy ordinance.

The plaintiffs' argument, as the appellate court here noted, distills down to a policy argument that municipalities should appropriate first and levy second. We are aware of the merits of such a procedure, but we are also aware of the difficulties inherent in the long-range financial forecasting that would be necessary if the District were forced to appropriate well before its fiscal year begins. *Cf. In re Application of the County Collector of Du Page County for Judgment for Taxes for the Year 1993*, 187 Ill. 2d 326, 334-35 (1999) (detailing the problems that schools districts would face under such a requirement). Indeed, the District's levy here was $121,117 less than its ultimate appropriation more than seven months later, despite the

fact that it received a purportedly accurate contribution rate from the Retirement Fund Board. Certainly this problem is not unique to forest preserve districts, but the statutes establishing other special districts are not before us here.

"The power to determine when a budget ordinance shall be passed, and the order of passage as between levy and budget ordinances, rests exclusively with the General Assembly." *People ex rel. Rockwell v. Chicago, Burlington & Quincy R.R. Co.*, 386 Ill. 114, 117 (1944). Here, we hold that the legislature allowed the District to pass a levy ordinance before it passed an appropriation ordinance. The District had authority for its IMRF levy, and the trial court correctly entered summary judgment in favor of the District.

## CONCLUSION

For the reasons that we have stated, the judgment of the appellate court is affirmed.

Affirmed.